Dale W. CRABTREE, Appellant,

v.

Theresa Marie CRABTREE,
Respondent.

No. WD 43332.

Missouri Court of Appeals,
Western District.

Jan. 29, 1991.

Linda L. Sherman, Harrisonville, for appellant.

James H. Young, Blue Springs, for respondent.

Before MANFORD, P.J., and BERREY and GAITAN, JJ.

BERREY, Judge.

Dale Crabtree appeals from the trial court's award of custody of his daughter, Amanda, to her mother, respondent Theresa Crabtree. Dale also appeals from an order requiring him to pay $250 per month for Amanda's support. Affirmed.

Dale and Theresa were married March 26, 1988. They first separated on April 24, 1989, and after an attempted reconciliation, separated for a second time in July, 1989. The marriage was stormy, marked by violence. Dale, for instance, had been found guilty of assaulting Theresa. One child was born of the marriage, Amanda, on October 26, 1988. Theresa had two children from prior marriages who resided with her, Jamie Cox, age eleven and Matthew Charley, age 6. Dale also had a child from a prior relationship but he had never seen, nor does he support that child.

After Amanda's birth, Theresa stayed home from work for six weeks. Both Theresa and Dale work for MAST Ambulance. Because of complications surrounding Theresa's pregnancy and the birth of Amanda, Amanda was cared for by her paternal grandparents. After Theresa returned to work, Amanda was left each work day at her paternal grandparents.

The parties moved from Butler to Kansas City. At this time arrangements were made to leave Amanda at the paternal grandparents from Sunday until Thursday or Friday. When in the care of her natural parents, Amanda was cared for partially by her twelve year old step-sister Jamie. Testimony differed as to how much care her mother or father gave her. Although appellant testified that Theresa provided little care for Amanda, Theresa testified that she was the parent who usually fed Amanda, got up with her at night, and made provisions for her care. She further testified as to Dale's "hands-off attitude" toward Amanda. Although Dale was critical of Theresa's entrustment of Amanda to Jamie for care, he did nothing about it himself.

Jamie testified in chambers regarding her responsibilities in regard to Amanda and her assistance around the house. She, at times, fixes Amanda's bottles, feeds her, changes diapers and bathes her. She also does dishes, vacuums and occasionally prepares dinner. Dale has seen, and Theresa admits, that Theresa slapped Jamie in the face.

Both parties requested primary physical custody of Amanda. Theresa expressed reservations about leaving Amanda in the care of Dale's parents, believing it best for Amanda to interact with other children at a state licensed day care facility. She also stressed the importance of Amanda's being with her half-siblings. Theresa has also made arrangements for sitter to stay with the child from the time that Amanda leaves day care until Theresa's return from work.

At the time of the dissolution Dale was earning approximately $1,963 per month, gross. Theresa earned $1,739 per month, gross and had an additional income of $575 per month received in child support for her other two children. Dale lives with his parents, thus avoiding some of his $2,096 monthly estimated expenses.

The trial court awarded "the care, custody and control" of Amanda to Theresa with visitation rights granted to Dale. Dale was ordered to pay $250 a month in child support. Dale appeals.

In his first point, Dale challenges the award of custody. He alleges that the award was based upon insufficient evidence and was against the weight of the evidence. Dale points out that Amanda had developed an interaction with the paternal grandparents and was adjusted to residing with them. He alleges that the mother has "repeatedly" physically abused Jamie. He alleges that the court ruled against its own findings.

■ Review of this court-tried case is governed by Rule 73.01 and the principles presented in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Upon review the judgment of the trial court must be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares

or applies the law. *Id.* at 32; *In re Marriage of Scobee,* 667 S.W.2d 467, 468 (Mo. App.1984). Each case involving custody must be examined in light of its own peculiar facts; there are no rigid or precise formulas for a court to follow in determining what the outcome of a case should be. *J-A-F- v. P-J-F-,* 552 S.W.2d 739 (Mo. App.1977). On appeal, the findings of the trial court will be upheld unless this court is convinced that the welfare of the child requires that another disposition be made. *Fastnacht v. Fastnacht,* 616 S.W.2d 98, 100 (Mo.App.1981). Where a determination of custody is to be made the test is what is the best interests of the child. *Knoblauch v. Jones,* 613 S.W.2d 161 (Mo.App.1981).

■ While it is true that the trial judge was critical of Theresa's parenting skills, urging her to take parenting classes and take more responsibility from Jamie, the court was equally critical about Dale's non-involvement. The judge remarked, "why would Mr. Crabtree tell me what a terrible job of taking care of Amanda his wife was doing, when he was living there at the same time, with the same opportunity to do those things for Amanda that he's claiming that his wife didn't do." While the mother's parenting skills are lacking, the father seems to have no parenting skills at all.

Appellant cites several cases regarding a parent's lack of parental supervision and judgment. Each of these cases is distinguishable on its facts from the instant case. In *Rodenberg v. Rodenberg,* 767 S.W.2d 594 (Mo.App.1989) the lifestyle of the mother included drug and alcohol problems, a male friend sleeping in the mother's bedroom and babysitters who had entertained their boyfriends at the home. In *M.L.G. v. J.E.G.,* 671 S.W.2d 312 (Mo.App. 1984), the mother left the child alone in the evening and spent the night with different men, even taking the child with her to the apartment of a male friend for an assignation.

Father does not make reference to his own parental skills or lack thereof but points out Amanda's relationship with her paternal grandparents. If anything, appellant's argument is most notable for its total lack of Dale's plans for caring for Amanda save for his reliance upon his parents as her primary caretakers.

Dale also points out Theresa's temper and her slapping of Jamie. His own acts of violence directed against Theresa are also telling. While neither parent is an ideal choice, we are unable to say that the trial court abused its considerable discretion in its award of custody of Amanda to Theresa, especially in light of the trial court's unique opportunity to observe the witnesses first hand and determine credibility. *M.D.R. v. P.K.R.,* 716 S.W.2d 866 (Mo.App. 1986). Appellant's Point I is denied.

■ Appellant, in Point II, claims error in the trial court's ordering father to pay $250 per month child support because the parties' earnings are nearby equal, the father is paying off marital debts and the child spends a nearly equal amount of time with both parents. Appellant cites *Williams v. Williams,* 510 S.W.2d 452 (Mo. banc 1974), for the proposition that the court should not enter an order for child support where the parties' financial situations are nearby equal and when custody of children is divided equally between the parents. *Williams,* however, dealt with a situation where a true split of custody occurred. Two of the couple's four children were placed in the father's custody and two were placed with the mother. *Id.* at 453. This is not the situation in the instant case.

In the instant case custody of Amanda was given to the mother. Although liberal visitation was give the father,[1] the time that Amanda spends with him is not as

---

1. Visitation was ordered for:
   1. Every week from 8:00 a.m., Sunday until 7:00 p.m., Monday;
   2. Every week from 10:00 a.m., Wednesday until 6:00 p.m., Thursday;
   3. From December 24 through December 30, in even numbered years; and from December 26 through January 2, in odd numbered years;
   4. For the month of July of each year, with the Respondent receiving visitation on the first and third weekends of July of each year;
   5. Every other child's birthday;
   6. For the Thanksgiving Holiday in even numbered years, and for the Easter Holiday in odd years.

"nearly equal" to that of mother as father suggests. Furthermore, the resources of both parties are not as equal as father suggests.

Section 452.340, RSMo 1986, directs the trial court to consider the resources of the child, the custodial parent and the noncustodial parent. Dale lives with his parents and pays no rent, utility expenses or daycare costs. Theresa, on the other hand, does incur rent, utility and daycare expenses.

The determination of child support is a matter for the sound discretion of the trial court. *See In re Marriage of Gore*, 781 S.W.2d 828 (Mo.App.1989). Under the facts of the instant case no abuse of this discretion has been demonstrated.

The judgment of the trial court is affirmed.

All concur.