Pamela A. LEONE, Respondent,

v.

Ronald J. LEONE, Appellant.

Nos. WD 50710, WD 51137.

Missouri Court of Appeals,
Western District.

March 5, 1996.

As Modified April 2, 1996.

Jean E. Goldstein, Hindman, Scott, Goldstein & Harder, Columbia, for Appellant.

Charles P. Todt and Kimberly J. Bettisworth, The Todt Law Firm, St. Louis, for Respondent.

Before SPINDEN, P.J., and BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

Ronald J. Leone (Father) appeals the trial court's judgment dissolving his marriage

from Pamela A. Leone (Mother). He contends the court erred by awarding Mother child support and granting her sole legal custody of the parties' two children. He also appeals the court's subsequent order denying his motion for a temporary restraining order and preliminary injunction. This court consolidated the appeals but addresses them separately in this opinion.

### Appeal From the Dissolution Decree

Father and Mother were married on April 16, 1988. They have two children, Hannah Leone, who was born on October 12, 1988, and Emily Leone, who was born on September 7, 1990. On August 1, 1993, the family moved from Buffalo, New York to Columbia, Missouri. Mother filed a petition for dissolution of marriage on November 1, 1993, in the Circuit Court of Boone County.

On December 30, 1994, the trial court entered an order awarding the parties joint physical custody of the children and awarding sole legal custody to Mother. During the school year, Mother was given custody of the children Monday through Thursday, with Father having custody Friday through Sunday. Father was given custody during the summer recess except for a three week period.

The court ordered Father to pay $762.00 per month in child support during the school year. Neither party was ordered to pay child support during the summer recess. Each party was awarded the personal property in their possession, and a 1985 Pontiac and 1988 Ford was set aside to Mother as her separate property. Mother's 401(k) plan, worth $24,000.00, was divided equally between the parties.

Father's first point contests the trial court's award of child support to Mother. In the first of three subpoints beneath this point, Father alleges the trial court abused its discretion by ordering him to pay child support to Mother because "the parties have identical incomes and nearly equal joint physical custody of the children."

 The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *In re Marriage of Clark*, 801 S.W.2d 496, 498 (Mo.App.1990). In reviewing the trial court's judgment, this court views the evidence and the inferences therefrom in a light most favorable to the judgment and disregards all contrary evidence. *Stein v. Stein*, 789 S.W.2d 87, 92 (Mo.App.1990). The court's determination as to the award of child support lies within its discretion and will not be reversed absent an abuse of that discretion or an erroneous application of the law. *K.R.W. by A.C.S. v. D.B.W.*, 830 S.W.2d 38, 40 (Mo.App.1992).

Each party submitted a Form 14, but the trial court rejected the parties' proposed Form 14 child support amounts. The trial court found Mother's gross monthly income to be $2258.75 and Father's gross monthly income to be $2333.00. The cost of reasonable work-related child care expenses was determined to be $499.00 per month and health care insurance $65.00 per month. The court then calculated the total presumed amount of child support in the sum of $1500.00 per month, with Mother responsible for 49.2% ($738.00) and Father responsible for 50.8% ($762.00). The court awarded Mother $762.00 per month in child support during the school term. The court then ordered Mother to pay the $65.00 per month health insurance cost.

 Under Rule 88.01, the trial court considers "all relevant factors" in determining the amount of child support, including the financial resources and needs of the children and of the parents. An award of joint custody does not prevent the trial court from awarding child support. § 452.375.10, RSMo 1994.[1] This is true even though the parties have similar incomes and the child spends a substantial amount of time with each parent. *Crabtree v. Crabtree*, 802 S.W.2d 567, 569–70 (Mo.App.1991). In *Crabtree*, this court held that it was not an abuse of discretion for the trial court to award child support under those circumstances. *Id.* The court emphasized that the party awarded support had

1. References to statutes are to the Revised Statutes of Missouri 1994.

higher expenses than the other parent, including rent, utility and day care expenses. *Id.* at 570.

■ One of the instructions for use of Form 14 states that "[a]n adjustment to the presumed child support amount *may* be appropriate when the child or children spend substantial time with both parents." Form No. 14, Directions for Use, Comment (D) (emphasis added). "This instruction clearly places the decision to adjust the award within the trial court's discretion." *Welker v. Welker*, 902 S.W.2d 865, 868 (Mo.App.1995). The court in *Welker* held that the trial court did not abuse its discretion in modifying the dissolution decree to order the father to pay the presumptive child support amount, even though the father had equal joint physical custody rights. *Id.* The court noted the testimony of the mother that, due to the father's work schedule, she had the children 90% of the time. *Id.*

■ Here, the trial court's child support award contains different provisions for the nine month school year and the three month summer recess. The court will review the two provisions of the court's award separately. First, the order that Father pay Mother support of $762.00 per month during the school term is examined, and it is found that such child support award was not an abuse of discretion. Although the parties have nearly equal time with the children when the entire year is considered, Mother has custody of the children for a majority of time during the school year. In addition, she has the children for nearly the entire school week. This means that she will be responsible for school-related expenses such as transportation, daycare, and extracurricular activities. This increased financial burden, coupled with the longer custodial periods, constitutes a basis for the court's award of child support. *Crabtree*, 802 S.W.2d at 569–70; *Welker*, 902 S.W.2d at 868.

■ A review of the court's decision that no child support be paid during the summer reveals that there is no substantial evidence to support the trial court's failure to award Father any child support during the summer recess. Except for a three week period,

Father is to have custody of the children for the entire summer recess. Just as Mother will be responsible for school-related expenses during the school year, Father will have to incur day care and other related expenses during the summer. The parties have nearly equal incomes and few assets. In addition, there was no evidence of any expenses Mother would incur during the summer which would justify her not contributing to the children's support. Considering these facts, there was no basis for the denial of child support to Father. The trial court abused its discretion in failing to award Father the presumed amount of child support of $738, less the $65.00 health insurance premium paid by mother, for each month of the summer recess.

■ Rule 84.14 permits the appellate court to enter the judgment that the trial court should have entered under the circumstances of the case. *Burkhart v. Burkhart*, 876 S.W.2d 675, 680 (Mo.App.1994). The record and evidence here permit this court to determine parties' child support obligations with confidence in the reasonableness, fairness, and accuracy of the decision. *Grunden v. Nelson*, 793 S.W.2d 569, 576 (Mo.App. 1990). The parties here do not dispute the accuracy of the financial record. In addition, a new judge would be required on remand, because the trial judge who entered the dissolution decree later recused herself from further proceedings in the case. Accordingly, this court will exercise its discretion under Rule 84.14 to dispense with the remand process and modify the award of child support. *Van Pelt v. Van Pelt*, 824 S.W.2d 135, 137 (Mo.App.1992).

■ Rather than order Father to pay Mother support during the school term and Mother to pay Father support over the summer, this court will annualize the support owed to aid the parties in budgeting. Under the trial court's order, the amount of child support to be paid to Mother is $762.00 for nine months or a total of $6858.00 per year. This court has found that during the summer school break Mother should be ordered to pay Father the Form 14 amount of $738.00 per month less $65.00 per month for health insurance, which Mother pays. For the

three months of summer, this totals $2019.00. Netting the amounts each parent must contribute for the support of the children, the result is $4839.00 owed by Father to Mother. When the net figure is divided by twelve to obtain equal monthly payments, Father is obligated to pay Mother $403.25 per month. Accordingly, the trial court's award of child support to Mother of $762.00 during the school year is reversed, and Father is ordered to pay her child support in the sum of $403.25 per month. This award of support is retroactive to December 30, 1994, the date of the original dissolution decree. *See Geil v. Geil,* 647 S.W.2d 161, 163 (Mo.App.1983).

Father also alleges the trial court erred in failing to allocate income tax dependency exemptions and child care tax deductions and credits. Father contends that he has primary physical custody of the children 51.3% of the year and therefore he would be entitled as "primary custodial parent" to take both children as tax dependency exemptions and all of the child care deductions and credits. Nevertheless, to "alleviate a great deal of confusion," Father asks this court to correct the trial court's "oversight" and grant each party one child as a tax exemption and 50% of any child care tax deductions and credits.

 In making its Form 14 calculations, the trial court must determine the custodial parent's reasonable work-related child care costs, less any federal income tax credit. *In re Marriage of Douglas,* 870 S.W.2d 466, 471 (Mo.App.1994). Father does not cite, nor did this court find in the extensive record on appeal, any evidence presented by either party pertaining to federal tax credits. Under these circumstances, the appellate court will not reverse the trial court's judgment for an abuse of discretion for failure to consider federal income tax credits in its calculations. *K.R.W.,* 830 S.W.2d at 41.

 Nor did the trial court abuse its discretion by failing to allocate tax exemptions between the parties. The trial court is afforded broad discretion in matters relating to the allocation of tax exemptions. *Hoffman v. Hoffman,* 870 S.W.2d 480, 484 (Mo.App.1994). In *Hoffman,* the eastern district of this court held that while it would have

been "appropriate" for the trial court to determine which party was entitled to a tax exemption, it was not reversible error for the court to fail to do so. *Id.* at 484–85. Likewise, the record here does not compel this court to find an abuse of discretion. The parties may agree to adjust their tax exemptions, but that is not a matter for this court. *Id.* at 485.

Finally, Father argues that the trial court's award of child support to Mother discriminated against Father in violation of his rights under the equal protection clause of the Fourteenth Amendment to the United States Constitution and Article I, § 2 of the Missouri Constitution. Specifically, Father argues that his gender was the "fundamental reason" the trial court failed to award him child support during the summer recess, while requiring him to pay child support during the school year. This court's modification of the award of child support is dispositive of the issue of child support, and makes it unnecessary to address this allegation. The trial court's award of child support is affirmed as modified.

Father's second point on appeal contends the trial court erred in granting sole legal custody to Mother. The trial court found that joint legal custody was "inappropriate" due to the parties' relationship, and awarded sole legal custody to Mother. Father argues that the trial court erred in granting Mother sole legal custody because it was "Mother's calculated and deliberate failure to cooperate and communicate with the Father" that precluded an award of joint legal custody. Father contends that the only evidence supporting Mother's request for sole legal custody was her own testimony. He cites *Margolin v. Margolin,* 796 S.W.2d 38, 50 (Mo.App. 1990), for the proposition that joint legal custody may not be denied solely due to one party's opposition to the arrangement.

 The appellate court affords the trial court greater discretion in determining child custody than in other matters. *Flieg v. Flieg,* 884 S.W.2d 347, 348 (Mo.App.1994). The trial court is presumed to have considered all the evidence and awarded custody in the best interest of the child. *In re Mar-*

*riage of Stuart,* 805 S.W.2d 309, 313 (Mo. App.1991). This court will not disturb the trial court's determination of custody unless it is manifestly erroneous and the welfare of the children requires a different disposition. *Douglas,* 870 S.W.2d at 469.

Under joint legal custody, the parents share the decision-making regarding the health, education and welfare of the child. *Gulley v. Gulley,* 852 S.W.2d 874, 876 (Mo. App.1993). An important factor for the trial court to consider when determining legal custody is the parties' ability to cooperate and function as a parental unit. *Id.* Joint custody is "not likely to be in the child's best interest if the parents cannot agree to agree." *Brisco v. Brisco,* 713 S.W.2d 586, 589 (Mo.App.1986).

§ 452.375.4 provides, in relevant part:

Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:

(1) Joint custody as to both parents, which shall not be denied solely for the reason that one parent opposes a joint custody award[.] . . .

This provision establishes a preference for joint custody. *In re Marriage of Barnes,* 855 S.W.2d 451, 455 (Mo.App.1993). However, the preference "is not that of a forced joint custody in order to induce the parents to find a common ground." *Margolin,* 796 S.W.2d at 49. Joint legal custody is appropriate only where parents demonstrate the willingness and ability to share the rights and responsibilities of raising their children. *Id.* Where the parties are unable to communicate or cooperate and cannot make shared decisions regarding the welfare of their children, joint custody is improper. *Wilk v. Wilk,* 781 S.W.2d 217, 221 (Mo.App.1989).

In considering the propriety of awarding sole legal custody to Mother, this court defers "to the wisdom, experience and superior opportunity to see, hear and evaluate the witnesses possessed by the trial judge." *Bonskowski v. Bonskowski,* 700 S.W.2d 99, 100 (Mo.App.1985). This is true even if the evidence might support a different result. *Hoffman,* 870 S.W.2d at 483.

The trial court may believe or disbelieve all, part, or none of any witness' testimony. *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654 (Mo. banc 1989). The court may even disregard uncontradicted testimony. *Mehra v. Mehra,* 819 S.W.2d 351, 357 (Mo. banc 1991).

There is substantial evidence that the parties were unable to cooperate or communicate in regards to the welfare of their children. Mother and Father disagreed about whether to send their children to private religious schools or public schools, which pediatrician should treat the children, and the time each should spend with their children. The limited communication between the parties during the period of separation was done through letters or messages on answering machines. Mother and Father even disputed the propriety of allowing one of their children to get a haircut without getting approval from the other parent. In short, the extensive record on appeal reveals the parties' strained relationship and inability to cooperate.

Contrary to Father's contention, Mother was not the only witness to testify about the parties' acrimonious relationship. Mother and Father were interviewed by Dr. A.E. Daniel, a psychiatrist, and Dr. Joel Ray, a psychologist. Both experts expressed concern over the inability of the parties to communicate. Dr. Daniel testified that the parties had several disagreements concerning their children, including education, church attendance, the time that each parent wanted to spend with the children, baby-sitting arrangements, and the selection of a pediatrician.

Dr. Ray's support of joint legal custody was based on his belief that both Mother and Father were good parents. When asked whether they were able to jointly make decisions regarding the welfare of their children, Dr. Ray responded, "I don't know." He admitted that the two had not shared decision-making very well since the time of their separation. Disagreements included "visitation," vacation planning, and medical care.

The guardian ad litem proposed an award of joint legal custody. When asked by the trial court how he thought Mother and

Father could "work it out," the guardian ad litem responded that he thought the parties would "rise to the occasion" after they were divorced. He explained that his position supporting joint custody was based on the belief that the parties would "learn to communicate with one another better than they have communicated." The trial court was not required to accept the recommendation of the guardian ad litem. *State ex rel. Bird v. Weinstock*, 864 S.W.2d 376, 385 (Mo.App. 1993). The court obviously found the guardian ad litem's position unconvincing and believed the testimony at trial which indicated that the parties were unable to cooperate or communicate.

Furthermore, the trial court was not required to believe the testimony which suggested that the parties' communication problems were due to Mother's unwillingness to communicate. Mother testified that she felt threatened by Father and saw his attempts at communication as an effort to control her relationship with their children. This court defers to the trial court's determination of credibility. *Bonskowski*, 700 S.W.2d at 100. Although there is evidence which could support a finding of joint legal custody, there is also evidence favoring an award of sole legal custody. The trial court is afforded considerable deference in custody matters, and it was not an abuse of this discretion to award Mother sole legal custody.

Father also argues that sole legal custody is not appropriate or practical where the joint physical custody order places the children in the custody of the parents for a nearly equal period of time. Father contends the award of sole legal custody to Mother under those conditions is "inherently inconsistent, inequitable, and impractical."

Nothing in Missouri's Dissolution of Marriage Act prohibits the trial court from awarding both joint physical custody and sole legal custody. Father cites nothing in support of the proposition that a trial court is barred from awarding sole legal custody where the parents have equal physical custody. Given the considerable discretion trial courts are afforded in making custody determinations, this court is unwilling to say that it is a per se abuse of discretion to award sole legal custody and equal physical custody. Point denied.

The award of child support is affirmed, as modified. In all other respects, the judgment of the trial court dissolving the parties' marriage is affirmed.

### Appeal from the April 26, 1995 Order

On February 18, 1995, approximately six weeks after the trial court's entry of the dissolution decree, Mother moved to St. Louis, Missouri, taking both children with her. Three days later, Father filed a motion to modify the dissolution decree and a motion for a temporary restraining order and preliminary injunction. The latter motion sought to enjoin Mother from moving to St. Louis and enrolling the children in schools in the St. Louis area, "pending final determination of the Motion to Modify the Judgment and Decree of Dissolution." The trial court determined that it did not have jurisdiction to consider either motion due to Father's appeal of the dissolution order on February 7, 1995.

Father then filed a petition for prohibition or in the alternative, for mandamus with this court to order the trial court to consider the motions. On March 17, 1995, this court issued an order which directed the trial court "to hear [Father's] motion to the extent the motion is directed to the enforcement of its orders of custody and maintaining the status quo." *State ex rel. Leone v. Roper*, No. 50782, Mo.App. W.D., filed March 17, 1995.

A hearing was thereafter held on April 25, 1995. Mother testified that she picked up the children from Father at approximately 5:30 a.m. on Mondays and returned the children at approximately 6:30 p.m. on Fridays. In the two months since she moved to St. Louis, Mother never failed to return the children to Columbia for the weekends. On April 26, 1995, the trial court entered an order denying the motion for temporary restraining order and preliminary injunction. The court found that Mother's relocation to St. Louis did not violate the joint custody order and taxed attorney fees against Father. The order was certified by the court as final and appealable.

In his third point, Father argues the trial court erred in denying his motion for temporary restraining order and preliminary injunction because Mother's relocation to St. Louis violated the joint physical custody order. Although neither party questions the finality of the trial court's order, this court must determine whether the order is final for purposes of appeal. *Estate of Sawade v. State,* 787 S.W.2d 286, 288 (Mo. banc 1990). The trial court's certification of its order as final is not binding on this court. *State ex. rel. Solid State Circuits, Inc. v. Springfield Mayor's Com'n on Human Rights and Community Relations,* 752 S.W.2d 72, 74 (Mo.App.1988).

A temporary restraining order seeks only to maintain the status quo between the parties until the issues in the case are adjudicated. *Id.* The denial of a prayer for a temporary restraining order or a preliminary injunction is interlocutory only and is not an appealable judgment. *Eickelmann v. Eickelmann,* 724 S.W.2d 261, 262 (Mo.App. 1986); *Londoff Village Rehabilitation Project v. Land Reutilization Authority of St. Louis,* 720 S.W.2d 372, 372–73 (Mo.App. 1986); *Pomirko v. Sayad,* 693 S.W.2d 323, 324 (Mo.App.1985). Accordingly, the portion of the appeal relating to the trial court's order denying Father's motion for a temporary restraining order and preliminary injunction is dismissed.

Father's fourth and final point contends the trial court erred in taxing attorney fees against him for the proceedings on his motion for temporary restraining order and preliminary injunction and his motion to modify. § 452.355.1 provides, in pertinent part:

> The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

Interim attorney fees awarded under § 452.355.1 are final appealable orders. *Zaegel v. Zaegel,* 697 S.W.2d 223, 224–25 (Mo. App.1985); *State ex rel. Carlson v. Aubuchon,* 669 S.W.2d 294, 297 (Mo.App.1984).

The trial court is afforded considerable discretion in determining whether to award attorney fees. *In re Marriage of Gore,* 781 S.W.2d 828, 832 (Mo.App.1989). The court is considered to be an expert in the necessity, reasonableness and value of fees. *Hembree–Shanaberger v. Shanaberger,* 903 S.W.2d 202, 205 (Mo.App.1995). To justify a reversal of an award of fees, the appellant must show that the trial court abused its discretion. *Hamilton v. Hamilton,* 886 S.W.2d 711, 718 (Mo.App.1994). An abuse of discretion is established only when the award is so "clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Meservey v. Meservey,* 841 S.W.2d 240, 248 (Mo.App. 1992).

Father argues that the trial court's award was an abuse of discretion because "very unusual circumstances" must be demonstrated for an award of fees under § 452.355.1. In *Ansevics v. Cashaw,* 881 S.W.2d 247, 251 (Mo.App.1994), this court rejected that contention, holding that the "very unusual circumstances" standard is inapplicable in domestic relations cases under Chapter 452. § 452.355.1 merely requires that the trial court consider "all relevant factors" in determining whether to award fees.

Relevant factors to be considered include the extent to which the fees were spent due to the opposing party's conduct. *T.B.G.,* 772 S.W.2d at 655. The conduct referenced is in regard to "the litigation requiring the expenditure of legal time." *In re Marriage of Myers,* 845 S.W.2d 621, 626 (Mo.App.1992). In particular, the trial court may consider what principal issues engendered the attorney fees and who raised and developed these issues. *Id.* At the conclusion of the proceedings upon Father's motion for temporary restraining order and preliminary injunction, the court found against Father on all of the issues he raised. The court then taxed attorney fees against Father. This court is unable to say, based on the record,

that the trial court's award of fees was an abuse of discretion. Father's fourth point is denied.

The award of child support is modified to order Father to pay Mother child support in the amount of $403.25 per month. In all other respects, the Decree of Dissolution is affirmed. The appeal of the April 26, 1995 order denying Father's motion for a temporary restraining order and preliminary injunction is dismissed since the order is not final for purposes of appeal. Finally, the portion of the April 26, 1995 order taxing attorney fees against Father is affirmed.

All concur.