**Michelle B. DENT, Respondent,**

v.

**Jeffrey P. DENT, Jr., Appellant.**

**No. WD 53978.**

Missouri Court of Appeals,
Western District.

Feb. 3, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 31, 1998.

As Modified March 31, 1998.

Application for Transfer Denied
May 26, 1998.

Peter M. Schloss, Liberty, for appellant.

James F. Ralls, Jr., Liberty, for respondent.

Before ULRICH, C.J., and SMART, J., and TURNAGE, Senior Judge.

ULRICH, Chief Judge.

Jeffrey P. Dent, Sr. (Father) appeals the order of the trial court granting Michelle B. Dent (Mother) sole custody of their minor children, Jeffrey Dent, Jr. and Sarah Dent and awarding Mother attorney fees. Father

raises three points of error on appeal. He contends the trial court erred in (1) failing to appoint a guardian ad litem where allegations that the children were subject to abuse and neglect were disclosed at trial; (2) designating Mother as sole custodian of the minor children where Father and Mother had agreed to the appropriateness of joint custody and where the evidence established that Father was a stable and responsible individual in contrast to Mother who was unstable; and (3) awarding Mother attorney fees where the relative financial circumstances did not warrant it, Father's efforts to seek custody were reasonable and Mother diverted marital assets both during and prior to litigation. For the following reasons, the judgment of the trial court is affirmed in part and reversed in part. The case is remanded for modification of the portion of the judgment granting child custody to conform with this opinion and for consideration of the amount of child support to be awarded by Mother to Father and for entry of such award.

### FACTS

Father and Mother were married on February 14, 1987. Two children were born of the marriage, Jeffrey Dent, Jr. born January 18, 1990, and Sarah Dent, born June 11, 1992. Mother testified that she and Father shared equally in the division of child care, housework and cooking.

Approximately two months after Sarah was born, Mother began to frequent bars two to three times per week, leaving the children in the care of Father. Mother testified that she drank approximately six drinks every night and spent approximately $20.00 per evening. In April of 1993, Mother was arrested for driving without her headlights on and taken to the police station where she submitted to a breathalyzer test. Mother acknowledged drinking and driving on that occasion. Mother resisted Father's complaints about her conduct.

Father confronted Mother about her consumption of alcohol and frequenting of bars in August, 1993. Mother elected to move out of the home, leaving the children with Father. This separation lasted two to three weeks. When Mother returned to the home, she and Father began seeing a marriage counselor. One and one-half weeks later, Mother again moved out of the home and again left the children with Father.

Mother testified that she returned to the home in October, 1993. Father testified, however, that this separation lasted three months, until December, 1993. Father and Mother again attempted reconciliation, and Mother agreed to quit frequenting bars to facilitate the reconciliation. Mother began frequenting bars again, however, in May, 1994. Mother testified she went to the bars six or more times per month.

Mother moved out of the home again in June, 1994, leaving children with Father. Father, however, allowed Mother to take the children on July 22, 1994, in hopes that Mother would assume more parenting responsibility. During this time period, Father paid Mother $300.00 every two weeks in child support and gave her additional money for groceries, rent and a rent deposit.

Mother suffered from an "anxiety attack" in November, 1994, necessitating two to three days hospitalization. Father visited Mother at the hospital and she suggested that the children reside with Father as this would be better for the children. Mother made this suggestion knowing that Father was co-habitating with his girlfriend, Shirley Bernard. When the children were returned to Father's custody they were pale, drawn and had dark circles under their eyes. Sarah had dried food and dry sticky juice in her hair. Sarah was also experiencing dental problems. Both children manifested behavioral problems. Mother moved in with her parents until she was better. Mother received a prescription for anti-depressant medicine and physicians indicated that she should continue taking the medicine for years. Mother, however, stopped taking the prescribed medicine three months later because she believed her condition improved. Mother has not suffered further anxiety attacks.

The children resided with Father between November 1994 and August 1995. While Mother agreed to pay Father $100.00 every two weeks in child support, Father testified

that Mother only gave him a total of $175.00 during that time period. During the same time period, Father gave Mother money to buy Christmas presents for the children. Mother also received an income tax refund in the spring of 1995 for $2,711.00, but informed Father the refund was $600.00. Mother did not pay her parents rent although her mother testified that she may have purchased groceries for the household. Mother testified she gave her parents $1,500.00 of the tax refund. During the summer of 1995, Mother's gas service was stopped and her car repossessed.

Mother testified that the parties originally agreed that the children would be returned to her custody after her condition improved. Mother removed the children from their daycare center on August 2, 1995, and refused to return them to Father. Mother did not allow the children to see Father on his birthday anniversary, August 3. Mother filed a Petition for Dissolution of Marriage on August 4, 1995, and did not permit Father to see the children until August 16, 1995. Mother allowed Father to see the children at her home, in her presence, only.

Mother permitted Father unrestricted visitation in October 1995. Father testified that he paid Mother child support in the form of direct payments to Mother and by paying for the children's daycare. Father also provided the children's health insurance. Mother testified that Father gave her $55.00 each week from August 1995 to the time of trial in addition to paying for the children's day care expenses.

Jeffrey was enrolled at the Santa Fe Trails child care program from September 1995 to July 22, 1996. Sarah was enrolled in that program from January 1996 to July 22, 1996. During Sarah's enrollment at the center, she suffered from a medical problem that caused her to soil her pants. When the program staff told Mother that it was not equipped to deal with children who were not toilet trained, Mother assured the staff that Sarah was toilet trained. Mother told the staff members that she had taken Sarah to a physician but then became upset when they repeatedly requested that Mother provide them with a physician's statement regarding Sarah's bowel problem. Mother was not prompt bringing Sarah clean changes of clothing, sometimes taking as long as two hours to bring the clothing. Mother hung up the telephone when staff members contacted her. On one occasion, Mother yelled at the caller, hung up the telephone, and retrieved Sarah from the center. Mother grabbed Sarah's arm and yelled at the staff member that she could lose her job for this. Mother admitted at trial that on one occasion she was ready to "beat [Sarah's] ass" because she was "pooping in her pants" but Mother never struck Sarah. After Mother changed Sarah's day care service, no further problems were experienced.

Staff members for the daycare center testified that the children's general condition deteriorated during the course of their enrollment at the center. The staff testified the children wore dirty clothes and had dirt on their necks. Their hair was unkept and matted. Sarah's hair often looked like she had slept with her hair braided and several times she wore the same clothing two days in a row. Angela Kenie, who watched the children the last two weeks of August when the Santa Fe Trails facility was closed, testified that Mother's home was disorganized and dirty. Mother testified that the children's bathing was affected due to her gas service being stopped when she was unable to pay her gas service bill.

Mother testified that she and her boyfriends consumed alcohol in the presence of the children. Mother also testified that her brother, David, resided with her and the children. Mother allowed David to consume alcohol at the home although he was then only seventeen or eighteen. The children were never left unattended or unsupervised. On one occasion, Mother left Jeffrey in the care of David who failed to get Jeffrey to the school bus timely.

Mother swatted Jeffrey on the rear end but denied ever striking Jeffrey.

Father filed a Motion for Temporary Custody and child support on September 22, 1995. Father alleged that Mother secreted the children and refused to inform Father where they were. He also alleged that

Mother refused to allow Sarah to attend scheduled dental appointments necessary to address her dental problems and that Mother had abandoned the children twice when she moved out of the home and left the children in his care.

At the conclusion of the trial, the court granted custody of the children to Mother with specific visitation to Father. Although both parties had requested joint custody, the court declined to enter an order of joint custody, finding that Mother and Father could not effectively communicate with each other. The court also awarded Mother attorney fees in the sum of $3,000.00. This appeal followed.

## STANDARD OF REVIEW

 As this is a court tried case, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "An appellate court should set aside a judgment on the ground that it is against the weight of the evidence only 'with caution and with a firm belief that the decree or judgment is wrong.' " *Harris v. Harris,* 803 S.W.2d 167, 169 (Mo.App. S.D.1991) (quoting *Jun v. Murphy,* 763 S.W.2d 290, 294 (Mo.App.1988)). In reviewing a contention that the evidence is insufficient, the evidence is viewed in the light most favorable to the verdict and deference is accorded to the trial court's assessment of credibility. *Hankins v. Hankins,* 920 S.W.2d 182, 186 (Mo.App.1996); *Ugbaja v. Sumpter,* 821 S.W.2d 557, 559 (Mo.App. 1991).

## I. THE TRIAL COURT DID NOT ERR IN NOT APPOINTING A GUARDIAN AD LITEM

 As his first point on appeal, Father argues the trial court erred in not appointing a guardian ad litem pursuant to section 452.423, RSMo 1994. Section 453.423 provides:

In all proceedings for child custody ... where custody, visitation, or support of a child is a contested issue, the court may appoint a guardian ad litem. The court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged.

§ 452.423.1 **RSMo.** "Child abuse" is defined as "any physical injury, sexual abuse, or emotional abuse inflicted on a child other than by accidental means by those responsible for his care, custody, and control except that discipline includes spanking, administered in a reasonable manner shall not be construed to be abuse." § 210.110.1, **RSMo 1994.** The definition for "neglect" is "failure to provide by those responsible for the care, custody and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical or any other care necessary for his well-being. § 210.110.5, RSMo 1994; *Frazier v. Frazier,* 845 S.W.2d 130, 131 (Mo.App.1993)." The statutory mandate to appoint a guardian ad litem is triggered only by allegation of child abuse expressly stated in pleading and not by mere introduction of evidence of abuse at trial. *Rombach v. Rombach,* 867 S.W.2d 500, 503 (Mo.1993); *accord Chapman v. Chapman,* 871 S.W.2d 123, 125 (Mo.App.1994). Where evidence of child abuse or neglect is introduced at trial, however, the court may require that the pleadings be amended to conform to the evidence and then appoint a guardian ad litem. *Rombach,* 867 S.W.2d at 504. The appointment of a guardian ad litem, in a situation where the pleadings are amended to allege child abuse or neglect, is consistent with the statutory mandate in section 452.423. *Id.*

Here, the Petition alleged neither child abuse nor child neglect by Mother. Neither Father nor Mother requested to amend their pleadings to allege either child abuse or neglect. The issue, therefore, is whether the evidence presented at the hearing established child abuse or neglect by Mother that required the court to sua sponte order the pleadings to conform to the evidence and appoint a guardian ad litem. *Id.* Father argues that the requisite abuse and neglect is established by Mother's removal of the children from pre-school; Mother's failure to take Sarah to her dental appointment; Mother's abandonment of the children when she

moved from the home and left the children with Father; Mother, her boyfriends, and her minor brother's consumption of alcohol in the home; Mother's frequenting bars; Mother's failure to ingest her prescribed anti-depressant medication; Mother's poor housekeeping habits; Mother's failure to pay the gas service bill resulting in the gas service being turned off; Mother's discipline of the children; Mother's failure to keep the children clean; and Mother's irresponsible treatment of Sarah's bowel problem.

■ Analysis of the evidence reveals that no child abuse or neglect by Mother was established. Mother's poor housekeeping habits cannot be used as evidence of either abuse or neglect. *See Gilman v. Gilman*, 851 S.W.2d 15, 17 (Mo.App.1993) (finding evidence of poor housekeeping did not constitute allegation of neglect under section 452.423.1). Additionally, Mother's consumption of alcohol and frequenting of bars does not establish abuse or neglect of the children. While the evidence demonstrated that Mother frequented bars and drank with her boyfriends and her minor brother in the presence of the children, no evidence was presented that her drinking endangered the children or that she or the other persons present harmed the children while drinking. Absent such a showing, evidence that a parent drinks is insufficient to require the appointment of a guardian ad litem. *See In re Marriage of Bertz*, 856 S.W.2d 932, 935 (Mo. App.1993) (finding father's driving in car with children after drinking did not constitute abuse or neglect under section 452.423.1); *Gilman*, 851 S.W.2d at 17 (holding husband's alcohol problem did not warrant appointment of guardian ad litem because alcohol problem did not result in any abuse toward the child). The evidence reflected that the children were supervised at all relevant times. When Mother frequented the bars and when she "abandoned" the children, the children remained in Father's care and subject to his supervision. When Mother drank in her home with her boyfriends or her brother, she supervised the children. While lack of supervision would establish neglect under section 452.423.1 (*see S.K.B. v. J.C.B.*, 867 S.W.2d 651, 656 (Mo.App.1993)(finding parent's lack of super-

vision of child constituted "neglect" under section 452.423.1); *Frazier*, 845 S.W.2d at 132 (same)), the evidence does not support such finding here. Mother's drinking and frequenting bars, therefore, does not establish either abuse or neglect under section 452.423.1.

■ Mother's discipline of the children likewise does not constitute abuse. Section 210.110, RSMo specifically allows parents latitude in disciplining their children so long as the discipline is administered in a "reasonable manner." **§ 210.110, RSMo.** Although striking a child anywhere, including the child's behind, may, depending on a number of factors including the amount of force used, the frequency of such corporal punishment, and the frequency and occasion of such conduct, constitute an "unreasonable manner" and be abuse, the evidence does not support a finding of abuse of either of the children in this case. Mother's swatting Jeffrey on his behind, on a single occasion without severity, is not, without additional evidence, abuse and constitutes reasonable discipline allowed under section 210.110, RSMo. *See Holmes v. Holmes*, 878 S.W.2d 906, 912 (Mo.App.1994) (finding father's hitting of daughter with belt constituted reasonable discipline); *Osmun v. Osmun*, 842 S.W.2d 932, 935 (Mo.App.1992) (finding appointment of guardian ad litem unnecessary because although mother alleged father disciplined son harshly using physical force, no evidence was presented that discipline was administered in unreasonable manner). Although Mother threatened to "beat [Sarah's] ass" for "pooping her pants", the parties agree that Mother never actually struck Sarah. The evidence, therefore, did not support a finding that Mother's discipline of the children constituted abuse.

■ Finally, Mother's allowing the children to wear dirty clothing; not having them take baths on a daily basis; failing to take Sarah to a dental appointment; removing the children from pre-school; and discontinuing of her anti-depressant medication also do not establish neglect. In order for the conduct of a parent to constitute abuse or neglect, the evidence must support a finding that the parent's conduct affects the well-being of the

children. *Osmun*, 842 S.W.2d at 935. Absent such a showing, the appointment of a guardian ad litem is not required. *See Id.* (finding appointment of guardian ad litem unnecessary because although father failed to take son to doctor or administer son medication for severe colds and eye infections, testimony did not indicate father failed to provide any nutrition or medical care necessary to the child's well-being). Father failed to present specific evidence that Mother's conduct required the court to amend the pleadings to allege child abuse and to appoint a guardian ad litem. The trial court, therefore, did not err in not appointing a guardian ad litem. Point one is denied.

## II. THE TRIAL COURT ERRED IN GRANTING SOLE CUSTODY TO MOTHER

Father's second point on appeal contends that the trial court erred in granting sole legal custody to Mother. Father specifically argues that sole custody was inappropriate because the parties requested joint custody and the evidence supported an award of joint custody. Father further argues that the award of sole custody to Mother was erroneous where the evidence established Father was the better parent to have primary custody of the children.

■■■ Whether the trial court's determination that joint legal custody was inappropriate was erroneous is first examined. "Joint legal custody" means that the parents share the decision-making rights, responsibilities and authority regarding the health, education and welfare of the child. § 452.375.1(1), RSMo 1994. Section 452.375.5 establishes a preference for joint legal custody. § 452.375.5, RSMo 1994; *Leone v. Leone*, 917 S.W.2d 608, 613 (Mo. App.1996). The preference, however, "is not that of a forced joint custody in order to induce the parents to find a common ground." *Id.*(quoting *Margolin v. Margolin*, 796 S.W.2d 38, 49 (Mo.App.1990)). An important factor for the trial court to consider when determining legal custody is the parties' ability to cooperate and function as a parental unit. *Id.* Joint legal custody is appropriate only where parents demonstrate

the willingness and ability to share the rights and responsibilities of raising their children. *Id.* Where the parties are unable to communicate or cooperate with each other and cannot make shared decisions regarding the welfare of their children, joint custody is improper. *Id.* Joint custody is "not likely to be in the child's best interest if the parents cannot agree to agree." *Id.*(quoting *Brisco v. Brisco*, 713 S.W.2d 586, 589 (Mo.App. 1986)).

■■■ Substantial evidence supports the trial court's determination that Mother and Father were "unable to effectively communicate with each other and, therefore, cannot share decision-making rights, responsibilities and authority relating to the health, education and welfare of the children." Mother and Father could not agree whether the children should attend pre-school; whether Sarah needed medical care for a bruise; whether Sarah should go to the dentist for her dental needs; and whether Mother should use physical punishment to discipline the children. The parties disagreed over Mother's care of the children; Mother's housekeeping habits; the quantity and quality of time that Mother spent with the children; Mother's treatment of Sarah's bowel condition; Mother's frequenting bars; Mother's consumption of alcohol in the children's presence; and Father's payment of child support. The communication between the parties was so poor that Mother prevented Father from unsupervised visitation with the children for two months. Mother testified she often hangs up the telephone when conversing with Father due to their inability to communicate. The evidence, therefore, supported the trial court's determination that the parties could not effectively communicate regarding the health, education and welfare of the children and, hence, joint custody was inappropriate.

■■■ Whether the trial court erred in awarding sole custody to Mother is now determined. Trial courts are afforded greater discretion in determining child custody than in other matters. *Leone*, 917 S.W.2d at 613. The trial court is presumed to have considered all the evidence and awarded custody in the best interest of the child. *Id.* Appellate review will not disturb the trial court's deter-

mination of custody unless it is manifestly erroneous and the welfare of the children requires a different disposition. *Id.* In considering the propriety of awarding sole legal custody to Mother, this court defers "to the wisdom, experience and superior opportunity to see, hear and evaluate the witnesses possessed by the trial court." *Id.* (quoting *Bonskowski v. Bonskowski*, 700 S.W.2d 99, 100 (Mo.App.1985)). This is true even if the evidence might support a different result. *Id.* The trial court may believe or disbelieve all, part of none of any witness' testimony. *Id.* The court may even disregard uncontradicted testimony. *Id.*

Section 452.375.2 specifies factors considered in awarding custody of children. It states:

The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved....

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state; and

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

§ 452.375.2(1–8), RSMo 1994.

Utilizing the factors enunciated in section 452.375.2, the evidence reveals that the trial court erred in granting sole custody of the children to Mother. Application of factors (3)-(6) support the conclusion that the best interests of the children require awarding Father their sole custody.[1] The evidence established that Father was a stable, capable and temperate individual while Mother was irresponsible and incapable of effectively caring for the children. Mother frequented bars at least six times per month spending approximately $20 per night, while Father never frequented bars. Mother drank with her various boyfriends and her minor brother in the presence of the children and left the apartment littered with beer cans after these nights of drinking. Mother's personal problems were reflected in her employment history, too. Mother had eight jobs over the course of the marriage while Father held one job. Father provided substantial monetary support for the care of the children while Mother experienced significant financial difficulties. While the children resided with Mother, her gas was turned off leaving the children without hot water, and Mother's car was repossessed. Despite claiming to have insufficient funds to pay the gas company and to make her car payments, Mother continued frequenting bars, spending approximately twenty dollars per evening. The children were continually dirty when they resided with Mother and began to manifest behavioral problems. In Father's care, however, the children were properly cared for, were bathed and were provided with clean clothes. In contrast to Mother's parenting practices, the parties agree that Father is a good parent capable of providing a stable environment for the children and that Father has a good relationship with the children.

Evidence relative to which parent is more likely to permit the children frequent and meaningful contact with the other parent (factor (8)) was presented. Mother's actions in removing the children from Father's home

---

1. Factor (1) is inapplicable as both parties sought custody of the children. The trial court appropriately did not hear evidence regarding factor (2) as the children were only ages 6 and 4 at the time of trial. *See Rinehart v. Rinehart*, 877 S.W.2d 205, 207 (Mo.App.1994) (finding factor (2) irrelevant where children where ages 2 and 4 at time of trial). Factor (7) is also inapplicable as neither Father nor Mother have any intention of relocating outside of the state.

and restricting Father's visitations evinces an unwillingness to permit frequent and meaningful contact between Father and the children. *Rinehart*, 877 S.W.2d at 207. Mother attempted to justify her conduct because of the poor communication between Mother and Father. The evidence established that communication between the parties remains poor and, therefore, Mother would probably again limit Father's visitation privileges if she were granted custody of the children. The evidence, therefore, established that the children's best interests are best served for Father to have sole custody of the children. The order of the trial court awarding Mother sole custody is reversed and the case is remanded for modification of the portion of the judgment granting child custody to conform with this opinion and for consideration of the amount of child support to be awarded by Mother to Father and for entry of such award. Point two is granted.

### III. THE AWARD OF ATTORNEY FEES WAS PROPER

Father's final point asserts that the trial court improperly awarded attorney fees to Mother. He specifically argues that the award was improper due to the parties' relative financial situations, Mother's conduct which increased the cost of litigation and Mother's diversion of marital assets both prior to and during litigation. Mother argues that the award was proper because Father had a greater income and because Father's conduct in seeking primary custody of the children increased the litigation expenses.

 Section 452.355, RSMo 1994, authorizes a trial court to award a reasonable amount for attorney fees incurred in maintaining or defending any proceeding under sections 452.300 to 452.415. The trial court is afforded considerable discretion in determining whether to award attorney fees. *Leone*, 917 S.W.2d at 616. The court is considered an expert in the necessity, reasonableness and value of fees. *Id.* To justify a reversal of an award of fees, the appellate court must determine that the trial court abused its discretion. *Id.* An abuse of discretion is established only when the award is so arbitrary or unreasonable that the award reflects indifference and lack of proper judicial consideration so as to shock one's sense

of justice. *Id.; Ritter v. Ritter*, 920 S.W.2d 151, 156 (Mo.App.1996); *Ansevics v. Cashaw*, 881 S.W.2d 247, 250 (Mo.App.1994).

 The evidence supports the trial court's award of attorney fees to Mother. Father testified that his gross monthly earnings were $2,552.00 while Wife testified her gross earnings per month were $1,300.00. One spouse's greater ability to pay is sufficient to support an award of attorney fees to the other spouse. *Meservey v. Meservey*, 841 S.W.2d 240, 248 (Mo.App.1992). The court is considered an expert on attorney fees and may award such fees without the aid of evidence. *Ritter*, 920 S.W.2d at 156.

 Father, however, alleges that the trial court did not properly consider Mother's conduct with regard to child custody. One factor to consider in awarding attorney fees to a party is the extent to which the other party's conduct required attorney fees. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 655 (Mo. banc 1989). The trial court may consider what principal issues engendered the attorney fees and who raised and developed these issues. *Id.* The principal contested issue at trial was the child custody determination. Mother's "conduct" that Father alleges increased the litigation costs merely constitutes Mother's effort to maintain custody of the children. This conduct cannot be said to have unnecessarily engendered attorney fees where Mother contended that she was best suited to receive custody of the children and where Father also sought custody of the children. The record does not support the claim that the trial court abused its considerable discretion in awarding attorney fees. Point three is denied.

The judgment of the trial court is affirmed in part and reversed in part. The case is remanded to the trial court for modification of the portion of the judgment granting child custody to conform to this opinion and for consideration of the amount of child support to be awarded by Mother to Father and for entry of such award.

All concur.