**Christopher MALAWEY, Respondent,**

**v.**

**Stephani MALAWEY, Appellant.**

**No. ED 83571.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 29, 2004.

520

Jon F. Althauser, Union, MO, for appellant.

Richard B. Dempsey, Washington, MO, for respondent.

MARY R. RUSSELL, Judge.

Stephani Malawey ("Mother") appeals from the judgment dissolving her marriage to Christopher Malawey ("Father"). She asserts three points on appeal. First, she alleges the trial court erred in awarding "primary physical and legal custody" of the minor children to Father. She asserts that the custody determination was incorrectly based on her financial status, and she argues that the trial court incorrectly denominated the custody award as "primary." Second, she argues the trial court erred in not awarding her retroactive child support. Lastly, she asserts that the trial court erred in ordering her to pay child support because it incorrectly rebutted the presumed child support amount by considering Supplemental Security Income ("SSI") payments received on behalf of her minor child. We agree with Mother that the custody award was incorrectly denominated as "primary." We modify the nomenclature of the custody judgment pursuant to Rule 84.14, and all other aspects of the custody determination are affirmed. We further affirm the trial court's denial of retroactive child support. We reverse

the trial court's child support award because we find the court erred in rebutting Mother's presumed child support amount, and we modify the child support award pursuant to Rule 84.14.

Father and Mother were married four years and had two children during their marriage. At the time of trial, J.M.M. was three years old and J.L.G.M. was almost two years old. J.L.G.M. has been diagnosed with cerebral palsy and requires occupational and physical therapy.

Father is employed by Coca–Cola Corporation. The trial court found that his gross monthly income is $1895. Mother was unemployed at the time of trial and had no income. She was receiving a monthly SSI payment of $552 for J.L.G.M.'s cerebral palsy. She was 20 years old at the time of dissolution, had only an eighth-grade education, and was on medication for bi-polar disorder. The trial court found that she would "have a difficult time obtaining appropriate full[-]time or part[-]time employment." Both parties sought child support from the other if awarded custody.

Father and Mother shared custody during their separation. Father had custody on his days off from work, Monday through Thursday. Mother had custody at all other times. This custody arrangement was altered at some point during the separation because Father refused to return custody to Mother. Mother was able to regain custody through a writ of habeas corpus. The court's judgment indicated that Father and Mother both sought "primary" physical custody of the children, and it further noted that neither party was interested in a joint legal custody arrangement.

The court found that "it [was] not appropriate to award joint legal or physical custody to the parties." The court also found it was in the children's best interest to award "primary legal and physical custody" to Father, with visitation to Mother. The court adopted the parenting plan of the children's guardian ad litem with some minor changes. The judgment provided that Mother "shall continue to receive the SSI benefit for the parties' child" and that she shall pay Father $352 per month in child support based on her receipt of the SSI benefit. She timely filed her notice of appeal.

■ The standard for reviewing a judgment of dissolution is the same for reviewing any court-tried action. *Breihan v. Breihan*, 73 S.W.3d 771, 774 (Mo.App. 2002). We will affirm the judgment of dissolution unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We will not retry this case, but rather we accept as true the evidence and reasonable inferences therefrom in the light most favorable to the verdict and we disregard all contradictory evidence and inferences. *Id.* We defer to the trial court's superior ability to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles not revealed in the transcript. *Id.* The trial court may accept or reject all, part, or none of witnesses' testimony. *Id.*

■ We presume the trial court reviewed all the evidence and awarded custody in view of the children's best interests. *Abernathy v. Meier*, 45 S.W.3d 917, 922 (Mo.App.2001). We give the trial court greater deference in child custody proceedings than in other matters. *Id.* This court will not disturb a child custody award unless we are firmly convinced that the children's welfare requires some other disposition. *Id.*

Mother's first point challenges the award of "primary legal and physical cus-

tody" to Father. She contends that the trial court incorrectly based its custody determination on her financial condition, and she argues that consideration of her financial condition was in error because her financial status would have been improved had she been awarded child support. Her first point also asserts that the court erroneously denominated the custody arrangement as giving Father "primary legal and physical custody."

■ We first address Mother's assertions that she was denied custody for financial reasons. Mother is correct in asserting that Missouri law prohibits a trial court from giving preference in awarding custody based on a party's financial status. Section 452.375.8 RSMo 2000.[1] Financial status should never be the basis for removing custody from a parent. *Baker v. Baker,* 923 S.W.2d 346, 348 (Mo.App.1996).

■ Mother argues that the following statement from the trial court's judgment reveals that it based its decision on her financial status: "[Mother] did not describe a realistic plan to prevent [the foreclosure on her home] or to pay monthly bills and expenses so that she could provide a stable home for the children. This failure is a significant factor in the decision to award primary custody to [Father]." Although this statement involves issues related to Mother's finances, it is not indicative that her financial status was the determinative factor in the court's decision to award custody to Father. Read in context, the trial court's judgment clearly expresses concern about Mother's ability to manage her finances, not her lack of resources. The judgment expresses the court's concerns that Mother did not have a "realistic plan" to prevent foreclosure on her home and that she would "have a difficult time obtaining ... employment."

The court's judgment illustrates that the court's concern was providing the children a "stable home."

Other factors the court considered in awarding custody to Father were as follows: "[Mother] has cancelled or not scheduled several of the required visits" for J.L.G.M.'s occupational and physical therapy; Father does not work during J.L.G.M.'s therapy appointment times; and Mother has no telephone, but Father has a beeper and telephone that can be used to arrange J.L.G.M.'s appointments.

We find no merit in Mother's assertions that the trial court erred in granting custody to Father because it based its custody award on Mother's financial condition.

We next address Mother's argument that the trial court erred in granting Father "primary legal and physical custody" of their children.

Mother initially asserts that the court erred in entering this custody order because it found that the temporary custody arrangement during the separation was in the children's best interest, but then altered that arrangement in the parenting plan ordered in the dissolution. The judgment states that the temporary custody arrangement allowed both parents "significant contact with both children," but nothing in the judgment indicates that the court intended the temporary arrangement to continue after the dissolution. The judgment clearly expresses the court's findings "that it is not appropriate to award joint legal and physical custody to the parties" and that "[i]t would be in the best interest of the parties' minor children ... for primary legal and physical custody to be awarded to [Father]."

Mother next asserts that court erred in granting Father "primary legal and physi-

1. All further statutory references are to RSMo 2000 unless otherwise indicated.

cal custody" because "primary custody" does not exist under Missouri law. We agree that the court erred in denominating the custody arrangement as "primary."

Section 452.375.1(1) defines child "custody" under Missouri law as "joint legal custody, sole legal custody, joint physical custody or sole physical custody or any combination thereof." Mother argues that the physical custody arrangement in this case should be titled "joint physical custody" because she is granted significant custodial periods with the children. She further argues that the legal custody arrangement intended by the court is unclear because the court titled it as "primary," rather than "joint" or "sole."

■ We first address the physical custody arrangement. The designation of physical custody as joint physical custody, rather than sole or primary physical custody with visitation rights for the other parent, is significant in that it determines the standard for future modification of the physical custody arrangement. *LaRocca v. LaRocca*, 135 S.W.3d 522, 525 (Mo.App. 2004) (citing *Baker v. Welborn*, 77 S.W.3d 711, 717 (Mo.App.2002)). A visitation award can be modified whenever modification would serve the children's best interests. Section 452.400.2. Modification of a custody decree, however, requires the court to find a change has occurred in the circumstances of the child or the custodian that necessitates modification to serve the children's best interests. Section 452.410. Further, designation as a joint physical custodian can have intrinsic value for a parent who believes a stigma attaches when the other parent is named the primary or sole custodian. *Loumiet v. Loumiet*, 103 S.W.3d 332, 337–38 (Mo.App. 2003). Given these factors, we must weigh Mother's assertions that the trial court should have designated that she and Fa-

ther shared "joint physical custody" of their children.

■ Section 452.375.1(3) defines "joint physical custody" as "an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents." Joint physical custody does not require the children spend equal amounts of time with each parent. Section 452.375.1(3). The statute does not define "sole physical custody." When the court orders significant periods where the child is in the care of each parent, the award is actually one of joint physical custody, regardless of how the court characterizes it. *LaRocca*, 135 S.W.3d at 525. The key consideration in carrying out Missouri's public policy is the amount of time the children spend with each parent, not what the arrangement is called. *Id.* 135 S.W.3d at 525. We look to the amount of time for which each parent has the care and supervision of the children to determine the proper designation of the physical custody arrangement as "joint" or "sole." *Id.* 135 S.W.3d at 525–26.

■ The judgment of dissolution clearly states that "it is not appropriate to award joint . . . physical custody to the parties." The parenting plan ordered in this dissolution denotes that Father is awarded "primary" physical custody and then provides a *visitation* schedule for Mother. The visitation schedule grants Mother specific weekends, holidays, and special days with the children. It also indicates that, after the children begin school, Mother will get the children for 2 designated periods of 23 consecutive days during the summer. We cannot find that this limited number of days the children will spend with Mother each year constitutes a "significant" period of time such that it indicates the trial court intended

Mother to have "joint" physical custody of the children. The trial court's clear intention was to give Father "sole" physical custody of the children and to provide Mother with visitation so that she could continue to have frequent, continuing, and meaningful contact with their children. The designation of physical custody as "primary" was in error.

 We next address the legal custody arrangement. Legal custody may be either "joint" or "sole." Section 452.375.1. Joint legal custody is defined as "the parents' shar[ing] the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child[ren], and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority." Section 452.375.1(2). Section 452.375.4 expresses a public policy preference for a custody arrangement that will best assure that both parents participate in decisions concerning their children's health, education and welfare, and ordering trial courts to determine custody arrangements that best assure both parents participate in such decisions so long as it is in the best interests of the child. This statute, however, does not create a presumption favoring imposition of joint custody. *Ficker v. Ficker*, 62 S.W.3d 496, 500 (Mo.App.2001). Joint legal custody is appropriate only where parents display the willingness and ability to share the rights and responsibilities of raising their children. *A.J.K. by R.K. v. J.L.*, 980 S.W.2d 81, 86 (Mo.App.1998).

 In this case, the record reveals incidents of physical and verbal altercations between the parties, including during custody exchanges. The trial court's judgment clearly states that it found the parties cannot communicate and "that it is not appropriate to award joint legal or physi-

cal custody to the parties." We find this statement indicative of the trial court's intention to award Father "sole" legal custody of the children. The designation of the legal custody as "primary" was in error.

 Rule 84.14 allows our court to "give such judgment as the court ought to give" and instructs that "[u]nless justice otherwise requires, the [appellate] court shall dispose finally of the case." Although the trial court erred in denominating Father's custody as "primary," we can render judgment that should have been rendered by the trial court in lieu of remanding the error for correction. *La-Rocca*, 135 S.W.3d at 525–26 (citing *Meiners v. Meiners*, 858 S.W.2d 788, 791 (Mo. App.1993)). This is particularly appropriate for judgments where there is no dispute as to the facts but only a dispute as to their legal significance. *Id.* 135 S.W.3d at 526. "We can render the judgment that the trial court should have rendered when the record and evidence give us confidence in the reasonableness, fairness, and accuracy of the conclusion reached." *Id.* 135 S.W.3d at 526.

In disposing of Mother's first point, we modify the judgment so that Father's custody is denominated "sole legal and sole physical custody," rather than "primary legal and physical custody." We change only the designation assigned to the custody arrangement and affirm the trial court's custody determinations in all other respects.

Mother's second point on appeal asserts that the trial court erred in not awarding her retroactive child support. Mother asserts that she did not have adequate financial resources during the separation while she had custody of the children.

 It is within the trial court's discretion to award child support retroac-

tive to the date of the filing of a Petition for Dissolution. Section 452.340.1. The trial court has considerable discretion in matters of child support and in making child support awards retroactive, and its judgment will not be reversed absent an abuse of its discretion. *Kolar v. Kolar,* 114 S.W.3d 440, 445 (Mo.App.2003). An abuse of discretion occurs when the ruling is "clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Porath v. McVey,* 884 S.W.2d 692, 697 (Mo.App.1994).

 While retroactive child support is authorized by section 452.340.1, it is not mandatory. *Nelson v. Nelson,* 25 S.W.3d 511, 524 (Mo.App.2000). In determining if Mother was entitled to retroactive child support it was "the function of the trial judge to 'balance the equities' and we will not substitute our judgment" for the trial court's judgment. *Wenger v. Wenger,* 876 S.W.2d 735, 741 (Mo.App.1994). "[A]n award of retroactive child support [rests] on findings similar to those supporting an award for prospective child support: the financial inability of the custodial parent to provide for all the children's needs and the noncustodial parent's ability to provide financial assistance in providing those needs." *Edmison v. Clarke,* 61 S.W.3d 302, 309–10 (Mo.App.2001). Under section 452.340.1, relevant factors to be considered by the trial court in determining whether to award Mother retroactive child support included: (1) the financial needs and resources of the child; (2) the financial resources and needs of the parents; (3) the standard of living the child would have enjoyed had the marriage not been dissolved; (4) the physical and emotional condition of the child, and the child's educational needs; (5) the child's physical and legal custody arrangements, including the

amount of time the child spends with each parent and the reasonable expenses associated with the custody or visitation arrangements; and (6) the reasonable work-related child care expenses of each parent. The trial court also should have considered whether the noncustodial parent contributed to the support of the child during the period prior to the dissolution. *See Halupa v. Halupa,* 943 S.W.2d 272, 276 (Mo. App.1997).

 During the period between the filing of the petition for dissolution and the issuance of the judgment of dissolution, Father and Mother shared custody of the children. The parties had no work-related child care expenses because the children were with Father during his days off from work and Mother was unemployed during this time. Father maintained health insurance for the children through his work, and Mother continued to receive the $552 monthly SSI payment for J.L.G.M. Given these circumstances, we do not find that the trial court abused its discretion in denying Mother retroactive child support. Mother's second point is denied.

Mother's third point asserts that the trial court erred in ordering her to pay Father child support because the court incorrectly rebutted the presumed child support amount based on Mother's receipt of the monthly SSI payment for J.L.G.M.

 The trial court must determine child support under section 452.340.8 and Rule 88.01, which require the court to follow a two-step procedure set out in *Woolridge v. Woolridge,* 915 S.W.2d 372, 379 (Mo.App.1996), which was adopted by the Supreme Court of Missouri in *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997). *Conrad v. Conrad,* 76 S.W.3d 305, 308 (Mo.App.2002). First, the trial court must determine the presumed child support amount in accordance with Form 14, either by accepting one of the parties' Form 14

calculations or by doing its own Form 14 calculation. *Id.* Second, the trial court must consider all relevant factors to determine whether to rebut the presumed child support amount as being unjust or inappropriate. *Id.* To determine the proper amount of child support, the trial court balances the needs of the children with the noncustodial parent's ability to pay. *Weaks v. Weaks,* 821 S.W.2d 503, 507 (Mo. banc 1991). Among the factors the court can considered in determining the proper child support amount are the financial needs and resources of the parties' child. Section 452.340.1(1).

■ We review of the trial court's application of the two-step procedure to determine if the child support award is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Conrad,* 76 S.W.3d at 308. After reviewing and determining that the trial court's application of the *Woolridge* procedure passes our standard of review, we then review for an abuse of discretion with respect to the trial court's rebuttal review of its presumed child support calculation. *Id.* (citing *Nelson,* 25 S.W.3d at 520).

■ The presumed child support amount calculated pursuant to Form 14 may be rebutted upon a finding that it is unjust or inappropriate after consideration of all relevant factors, including the factors outlined in section 452.340.1.[2] Rule 88.01; section 452.340.8. There is no mandatory worksheet or formula to be used in determining whether a presumed child support amount is unjust or inappropriate and the court may consider non-Form 14 factors in making its rebuttal determination. *Woolridge,* 915 S.W.2d at 379. Rule 88.01 provides that to rebut the presumed child support calculation, the trial court should enter a specific finding on the record that the presumed amount, after consideration of all relevant factors, is unjust or inappropriate.

In this case, Mother's presumed child support amount under the Form 14 calculation was $0 because she had no income. She, however, was the "representative payee"[3] of J.L.G.M.'s $552 monthly SSI payment. The court's dissolution judgment stated that her presumed child support amount of $0 was "unjust and inappropriate under the circumstances," and the court rebutted the Form 14 calculation, saying "it is in the best interests of the parties' children for [Mother] to continue to receive the SSI benefit for the parties' child and for [Mother] to pay child support to [Father] of $352 per month. . . . ." The judgment also stated: "[Mother] shall continue to receive the SSI benefit for the parties' child and [Mother] is ordered to pay child support to [Father] of $352 per month. . . ."[4]

Mother asserts the trial court misapplied the law by ordering that she "shall" continue to receive the SSI benefit for J.L.G.M. and by using the SSI payment to

2. These factors are set out in our discussion of Mother's second point, *see supra* at 9–10.

3. 42 U.S.C. section 1383(a)(2)(A)(ii)(I) states that the Commissioner of Social Security has the authority to determine who shall receive payment of benefits from the Social Security Administration. Under the code, a person receiving benefits on behalf of an eligible beneficiary is termed a "representative payee." *See id.*

4. Under the dissolution judgment, Mother would retain 36 percent of the SSI payment each month and pay Father 64 percent of the benefit. There is no indication in the court's order if these percentages coincide with the amount of time each party has physical custody of the children.

rebut her presumed child support amount calculated under Form 14.

■■■■■ SSI benefits are administered under the Supplemental Security Income Program, Title XVI of the Social Security Act, a social welfare initiative for the aged, blind, and disabled that bases benefit eligibility on need. *State ex rel. Dep't of Soc. Servs. Div. of Child Support Enforcement v. Kost,* 964 S.W.2d 528, 530 (Mo.App.1998) (citing *Kyle v. Kyle,* 582 N.E.2d 842, 844 (Ind.App.1991)). SSI payments are made to qualifying families of disabled children to ensure that the recipient's needs are met at a subsistence level. *Id.* (citing *Kyle,* 582 N.E.2d at 846 (citing 42 U.S.C. section 1382c(a)(1) (1990))). SSI benefits are intended to "help families with disabled children achieve parity with families without disabled children." *Id.* (citing *Kyle,* 582 N.E.2d at 846).

In *Kost,* a noncustodial father sought to have his presumed child support calculation reduced because his son received SSI benefits that were paid to the child's mother, the custodial parent. 964 S.W.2d at 529. The father argued that his presumed child support amount was unjust or inappropriate because the SSI benefits were not factored into his Form 14 calculations, and he argued that the presumed amount should, therefore, be rebutted. *Id.* The Western District held that the father was not entitled to have his support obligation credited for his child's SSI benefit. *Id.* at 530–31. The court stated that because SSI benefits are granted to offset the financial burden associated with a disabled child's disability, they do not lessen the child's need for financial support from his parents. *Id.* at 530. The court held that SSI payments received for a disabled child are intended to supplement parental income, not substitute for it. *Id.; see also Lewis v. Dep't of Soc. Servs.,* 61 S.W.3d

248, 259–60 (Mo.App.2001) (applying the holding in *Kost*).

The *Kost* court noted that eligibility for an SSI benefit, and the amount of the benefit, is dependent on parental income and is recalculated at frequent intervals to account for income fluctuations. 964 S.W.2d at 531. The court adopted the rule articulated by the Indiana appellate court in *Kyle,* which held that a "noncustodial parent's child support obligation [is] not impacted by the receipt of SSI on the behalf of a disabled child." *Id.* at 530 (citing *Kyle,* 582 N.E.2d at 846). The court found that the child's receipt of an SSI payment did not make his father's presumed child support amount unjust or inappropriate, and, therefore, the father was not entitled to have his presumed amount rebutted. *Id.* at 531.

■■■■ Although the holding in *Kost* prevents use of an SSI payment to lessen a noncustodial parent's child support obligation, we find the same rationale used in *Kost* is applicable to the facts of this case because we agree that a child's receipt of an SSI benefit should not alter a noncustodial parent's support obligation. In this case, Father, the custodial parent, should not benefit in the receipt of child support solely on the basis that Mother, the noncustodial parent, is the representative payee for J.L.G.M.

The trial court also erred in ordering that Mother "shall" continue to receive J.L.G.M.'s SSI benefit. 42 U.S.C. section 1383(a)(2)(A)(ii) clearly states that the Commissioner of Social Security has the authority to determine who shall receive payment of benefits from the Social Security Administration, and nothing in this section confers authority on state courts to determine who shall receive SSI benefits on behalf of a disabled child. Federal regulations determine who will be appointed as a beneficiary's representative payee.

20 CFR section 416.601(a)(2). For a beneficiary under age 18, the preferred representative payee is the custodial parent, followed by a guardian or a noncustodial parent. 20 CFR section 416.621(b). Given these regulations, Father could apply to be J.L.G.M.'s representative payee, instead of Mother.

We find the trial court erred in ordering Mother to continue receiving J.L.G.M.'s SSI benefit and in using the SSI benefit to rebut her presumed child support obligation.

Rule 84.14 permits us to enter the child support · judgment that the trial court should have entered under the circumstances of a given case if the record and evidence before us permit us to determine the parties' child support obligations with confidence in the reasonableness, fairness, and accuracy of the decision. *Leone v. Leone,* 917 S.W.2d 608, 612 (Mo.App.1996). The parties here do not dispute the accuracy of the financial record, and we will, therefore, exercise our discretion under Rule 84.14 to dispense with the remand process and modify the award of child support. *See id.* Accordingly, the trial court's award of child support to Father of $352 is reversed, because Mother's Form 14 amount should not have been rebutted by her receipt of the SSI payment. Mother's presumed child support under the Form 14 calculation was $0 and, in accordance with Rule 84.14, we enter this amount as her child support obligation. This award of support is retroactive to September 9, 2003, the date of the original dissolution decree. *See Leone,* 917 S.W.2d at 613 (citing *Geil v. Geil,* 647 S.W.2d 161, 163 (Mo.App.1983)).

The child custody award is modified, as previously stated, pursuant to Rule 84.14. The child support award is reversed and modified in accordance with Rule 84.14.

In all other respects, the judgment of the trial court, as modified, is affirmed.

GARY M. GAERTNER, SR., P.J., and ROBERT G. DOWD, JR., J., concur.