**Scott W. HALE and E. Marie Hale, Respondents,**

**v.**

**George W. HALE, Doris R. Hale, and the George W. Hale Trust, Appellants.**

**No. ED 85644.**

Missouri Court of Appeals, Eastern District, Northern Division.

Dec. 27, 2005.

Dennis Owens, Kansas City, MO, for appellant.

Scott Templeton, Kirksville, MO, for respondent.

KENNETH M. ROMINES, Judge.

### Background

This matter is a partition suit between father and son. From 1968 to 2001, George Hale[1] ("George") worked for General Motors as an engineer and production supervisor, as well as in planning. George also began working for H & R Block in 1972, where he prepares taxes. George's son, Scott Hale ("Scott"), is a Second Lieutenant in the Marine Corps—a job that requires Scott to travel overseas, often for months or years at a time.

In the 1980s, George and Scott began investing in repossessed farm properties. These properties include a farm in Sullivan County ("Sullivan farm"), a farm in Ray and Carroll counties ("Ray–Carroll farm"),

---

**1.** The deeds and pleadings in this case refer to George and his wife, Doris Hale, and Scott Hale and his wife, Marie Hale. Because the heart of the conflict involves George and Scott, their names are used.

a farm in Knox and Shelby counties ("Knox–Shelby farm"), and a cattle partnership.

On 14 May 2001, George decided he could no longer work with Scott. The parties could not decide how to divide the farms or the cattle partnership, or their related income and expenses. Scott filed a petition for partition of the properties. The case was heard in a bench trial before the Circuit Court of Shelby County, the Honorable Hadley E. Grimm, presiding. The Court entered its Interlocutory Judgment on 30 December 2003. The Court entered its Final Judgment with Findings of Fact and Conclusions of Law on 17 December 2004. George appeals this judgment, and we affirm.

### The Judgment Below

With respect to all properties, the Court found that George co-mingled the income and expenses from the properties in one account, along with the income and expenses from other property owned by George. The Court also found that George failed to produce the records needed to make a precise accounting of these expenses and income. The Court's findings regarding the individual properties are set forth below.

### Sullivan Farm

Although this farm was deeded jointly in both George's and Scott's names, Scott was its intended owner. Despite George's testimony to the contrary, George intended his contributions to the farm's down payment, principal, and interest, to be a gift to Scott. In 2000, George executed a deed that conveyed the farm to Scott. Based on the testimony of expert Ron Plain, a professor with the University of Missouri's Department of Agriculture Economics, $15,000 per year represents a reasonable cash rental value of the farm from 1988 to 1999. Scott was awarded this amount, plus nine percent interest, less provable costs of permanent improvements, and less federal and state income taxes and real estate taxes paid by George.

### Ray–Carroll and Knox–Shelby Farms

George and Scott entered an oral partnership agreement to purchase farm property, and acquired the Ray–Carroll and Knox–Shelby farms pursuant to this agreement. Both farms were titled in the names of Scott Hale and the George Hale Trust ("Trust"). Thus, the deeds created a tenancy in common—with Scott and Trust each presumptively owning a one-half interest. Because it is impossible to determine each party's capital contribution from the record, the presumption of equal co-ownership was not rebutted. Scott was awarded one-half the value of the Ray–Carroll and Knox–Shelby farms as of 14 May 2001, plus nine percent interest, less one-half of the sale expenses. Scott was also awarded a percent of the income, plus interest; George was allowed to deduct taxes and improvement costs.

### Cattle Partnership

In fall 1998, George and Scott entered an express, oral agreement to create a cattle partnership. The parties orally agreed to share income and expenses equally. However, with the exception of the proceeds from a calf sale in 2001, George received all income and paid all expenses. The parties dissolved the partnership by mutual agreement on 14 May 2001, but did not settle the partnership accounts. Thus, George retained the cattle, and Scott allowed George to continue the business. Scott was awarded the value of a one-half interest in the cattle as of 14 May 2001, plus interest.

### George's Claims of Error

George raises six points on appeal. First, with respect to the Sullivan farm, George argues that the Court improperly relied on Ron Plain as an expert and awarded Scott $15,000 per year in rental income, without considering George's contributions to the property or the property's losses. Second, George argues that the Court erred when it divided the Ray–Carroll and Knox–Shelby farms equally, because the presumption of equal co-ownership was rebutted with evidence of his contributions to the properties.[2] Third, George argues that the Court erred when it failed to award him credit for costs and payments he made to the farms. Fourth, George argues that the Court erred when it failed to allocate the losses of the cattle partnership, as required by Missouri's Uniform Partnership Law, and failed to consider expenses George paid. In his fifth point, George argues that the Court erred when it awarded Scott's attorney, Scott Templeton ("Templeton"), a fee equivalent to a real estate broker's fee, rather than an hourly rate. Finally, George argues that the Court erred when it awarded Scott prejudgment interest. We disagree with all of these claims.

### Analysis

We first note that the evidence presented at trial was crude and incomplete, at best. George, a self-proclaimed tax expert, co-mingled the income from all properties in a single account. Thus, a precise accounting of the income and expenses involved with each property is impossible. At his deposition, for example, George stated that he did not have any documents regarding the Sullivan accounting—nor did he know how much money the Sullivan farm generated. At the second hearing, however, George produced ten grocery bags of such documents. George also hired an accountant to recreate records of his and Scott's contributions to the farms. However, because George did not have all the records needed to produce a proper accounting, he had to recreate them. Thus, we acknowledge the difficult record before the court below.

### Partition of Sullivan, Ray–Carroll, and Knox–Shelby Farms

 First, we address George's first and second points of error, regarding the Sullivan, Ray–Carroll, and Knox–Shelby farms. With respect to our review of the Court's reliance on expert Ron Plain's testimony regarding the cash rental value of the Sullivan farm, we note that the Court has discretion in deferring to an expert's assessment of what information is reasonably reliable. *Whitnell v. State*, 129 S.W.3d 409, 416 (Mo.App. E.D.2004). Questions regarding the sources and bases of an expert's opinion affect the weight rather than the admissibility of the opinion. *Id.* The exclusion or admission of expert testimony is within the sound discretion of the trial court, and we will not disturb this ruling absent a clear abuse of discretion. *Id.* Plain has conducted surveys of Missouri property for more than 22 years. He testified that he compared a description of the Sullivan farm to survey information and historical results for Missouri property. The Court had an opportunity to evaluate the basis of Plain's opinion, and we defer to the Court's assessment of his testimony. The Court did

---

**2.** Scott responds that George's second point of error failed to preserve this issue for appellate review. Although George's point relied on is certainly not perfect, we are able to discern his argument and will hear this point. *See Thummel v. King*, 570 S.W.2d 679, 685–86 (Mo. banc 1978); *Gray v. White*, 26 S.W.3d 806, 816 (Mo.App. E.D.1999).

not err when it relied on Plain's testimony.[3]

■ We now turn to the Court's partition of the Sullivan, Ray–Carroll, and Knox–Shelby farms. The Court's judgment must be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We accept as true the evidence and reasonable inferences therefrom in the light most favorable to the verdict, and disregard all contradictory evidence and inferences. *Malawey v. Malawey,* 137 S.W.3d 518, 522 (Mo.App. E.D.2004). In our review, we also defer to the Court's superior ability to judge factors such as credibility, sincerity, character of the witnesses, and other intangibles not revealed in the transcript. *Id.* The trial court may accept or reject all, part, or none of the witnesses' testimony. *Id.*

■ At trial, the parties presented conflicting testimony regarding ownership of the farms. With respect to the Sullivan farm, Scott testified that he is the intended owner. Scott also testified that George offered to put his name on the deed only so he could manage the farm when Scott was abroad; Scott agreed. George, however, testified that he and Scott were equal co-owners of the farm. George testified that he only deeded the farm to Scott so Scott would inherit more property than his sister—not to relinquish ownership. With respect to the Ray–Carroll and Knox–Shelby farms, Scott testified that he and his father had an oral agreement to enter a "partnership" to acquire a "conglomerate" of land, and thus co-owned these two farms equally. George denied the exis-

tence of a partnership, and testified that he and Scott merely agreed to purchase the Ray–Carroll farm. Scott also testified that, with respect to all properties, George received all income, paid all debts and taxes, and enjoyed all tax benefits.

After hearing George and Scott's conflicting testimony regarding ownership of the farms, the Court determined Scott's testimony was credible, but that George's testimony was not credible. Because the trial court is in a superior position to evaluate witness credibility, we defer to the Court's determination. *See Malawey,* 137 S.W.3d at 522. The Court's partition of the Sullivan, Ray–Carroll and Knox–Shelby farms was not error. Points one and two are denied.

### Credit for Costs and Payments

Our review of point three is determined by *Murphy v. Carron, supra.* The Court had an opportunity to hear the parties' evidence regarding costs and payments made to the farms. The Court was free to disbelieve George's testimony regarding the amounts he allegedly spent. Because the Court was free to accept or reject all, part, or none of each witness's testimony, we defer to its determination. *See Malawey,* 137 S.W.3d at 522. The Court did not err when it declined to award George credit for these amounts. Point three is denied.

### Cattle Partnership

■ Our review of point four is also determined by *Murphy v. Carron, supra.* The Court found credible Scott's testimony that the parties orally agreed to share all income and expenses equally. Because the parties had an agreement regarding the

---

**3.** In addition to his objections to Plain's calculation methods, George also contends the Court improperly relied on Plain's estimates .of *cash rent* value, because the farm was rented on a *crop share* basis. However, Plain testified that cash rent tends to produce *less* money over time than crop share—if Plain's calculations were inaccurate, they were low, and actually favorable to George.

distribution of profits and losses, the Court properly declined to apply Missouri's Uniform Partnership Law. The Court also found that, despite this agreement, George received most of the income and all of the tax benefits, and paid all expenses. As mentioned above, the Court had an opportunity to hear the parties' evidence regarding the expenses and income involved. The Court was free to disbelieve George's testimony regarding the expenses he allegedly incurred in connection with the cattle partnership. Because the Court was free to accept or reject all, part, or none of each witness's testimony, we defer to its determination. *See Malawey*, 137 S.W.3d at 522. Point four is denied.

### Attorney's Fees

Because a court's award of attorney's fees is presumptively correct, we review George's fifth point of error for an abuse of discretion. *Norber v. Marcotte*, 134 S.W.3d 651, 663 (Mo.App. E.D.2004). The complaining party has the burden to show the Court's decision was against the logic of the circumstances, and so arbitrary and unreasonable as to shock one's sense of justice. *Id.*

At trial, Templeton testified that he spent 177.1 hours working on the partition sale alone. In its judgment, the Court stated that "an attorney's fee of $57,180 is fair and reasonable," but did not indicate that this fee was a real estate commission. In addition, this fee is less than the $93,-267.47—or 4.89 percent of the sale price, which would have represented a real estate commission—requested by Templeton. George has not shown that the attorney's fee awarded is in fact a real estate commission, or is unreasonable. We cannot say that the Court abused its discretion. Point five is denied.

### Prejudgment Interest

Our review of George's sixth and final point of error is guided by *Murphy v.*

*Carron, supra.* Section 358.420 RSMo. (2000) provides that, when a business continues after dissolution without settlement of partnership accounts, a retiring partner is entitled to: "the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership *with interest*, or ... the profits attributable to the use of his right in the property of the dissolved partnership ...." (emphasis added); *Prange v. Prange*, 755 S.W.2d 581, 589 (Mo.App. E.D.1987). In this case, the Court found that the business continued after the date of dissolution, 14 May 2001; determined the value of Scott's assets in the cattle partnership as of that date; and awarded Scott interest on this amount. The Court complied with the statute, and, thus, its award of prejudgment interest was not made in error. Point six is denied.

The judgment is affirmed.

GLENN A. NORTON, C.J., and CLIFFORD H. AHRENS, J., concur.