247 S.W.3d 921 (2008)
In re the Matter of L.J.S., by A.C.H., as next friend, and A.C.H., individually, Petitioner-Respondent,
v.
F.R.S., Respondent-Appellant.
No. 28479.
Missouri Court of Appeals, Southern District, Division Two.
March 26, 2008.
*923 Susan S. Jensen, Springfield, for Appellant.
Luther H. Kemp, Rogersville, for Respondent.
Marion A. Adams, Springfield, for Juvenile.
NANCY STEFFEN RAHMEYER, Judge.
On May 2, 2005, Anthony Holt ("Father") filed an action to determine paternity of child, L.J.S., born on September 1, 2002, against Faith Simmons ("Mother"). At the January 26, 2007 trial, the court heard evidence and made determinations on the issues of legal and physical custody. Father's paternity was not contested. The trial court entered a judgment on April 9, 2007, which granted joint legal custody of the minor child to Mother and Father, *924 indicated the address of Mother shall be used for mailing and educational purposes for the child, ordered Father to pay $423 per month in child support, and granted joint physical custody with visitation[1] for Father on Tuesday overnight, alternate weekends, alternate holidays, and several weeks in the summer.
In three points, Mother argues that (1) the trial court erred in ordering joint legal custody because it was not supported by substantial evidence, (2) the trial court erred in ordering joint physical custody with unsupervised contact because the weight of the evidence indicated that supervised visitation was in the child's best interest, and (3) the trial court erred in refusing to award Mother a judgment of $3,768 in retroactive child support. This Court finds that the order for joint legal custody and joint physical custody with unsupervised contact was supported by the evidence and we find no abuse of discretion in the trial court's decision not to award the retroactive child support in the amount of $3,768.

Background
When L.J.S. was born, Mother and Father were approximately eighteen years old. Mother and Father had a relationship at the time of L.J.S.' birth and Father was present at the hospital when L.J.S. was born. Father is listed on L.J.S.' birth certificate and neither party contested paternity at trial. Shortly after L.J.S. was born, Father joined the military and Mother and Father ended their relationship. Prior to the relationship with Mother and Father ending, Father had regular visits with L.J.S. These visits continued after the parties ended their relationship until Father left for basic training in August of 2003. Father was in basic training until December of 2003; he was then sent to Korea in January of 2004 for one year; and when he returned to the United States he was based in Kentucky until August of 2006. During that time Father received several short periods of leave. The parties attempted to make plans for visitation when it was possible. Father had visitation with L.J.S. between five and eight times while he was in the Army, and had several additional visits after being discharged from active duty in August of 2006. In May of 2005, Father filed a petition to determine paternity against Mother. The trial was held in January 2007 after Mother, Father, and L.J.S. were evaluated by a court-appointed therapist. This appeal arises from the April 9, 2007 Judgment of that court.

Standard of Review
Mother's three points on appeal challenge the trial court's determinations regarding legal custody, physical custody with unsupervised visitation, and retroactive child support payments. Our review of this judgment is the same as that in any court-tried case; we must affirm the trial court's determination unless it is not supported *925 by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Abbott v. Perez, 140 S.W.3d 283, 290 (Mo. App. E.D.2004). "Substantial evidence is competent evidence from which the trial court could reasonably decide the case." Bauer v. Bauer, 38 S.W.3d 449, 455 (Mo. App. W.D.2001). We defer to the trial court's determinations regarding the credibility of witnesses. Patterson v. Patterson, 207 S.W.3d 179, 182 (Mo.App. S.D. 2006). In custody and visitation matters, we give even greater deference to the determinations of a trial court than we do in other civil cases. McCubbin v. Taylor, 5 S.W.3d 202, 206 (Mo.App. W.D.1999). The trial court has broad discretion in these matters and we presume that the court awarded custody in accordance with the child's best interest. Malawey v. Malawey, 137 S.W.3d 518, 522 (Mo.App. E.D. 2004). The decision of the trial court will be upheld unless we are firmly convinced that the welfare and best interests of the child require otherwise. Id.

Joint Legal Custody
The welfare of the child is the primary consideration in making custody orders. McCauley v. Schenkel, 977 S.W.2d 45, 50 (Mo.App. E.D.1998). The trial court's initial child custody determination must also be made after consideration of all the relevant factors, including eight specific statutory factors. See section 452.375.2(1)-(8).[2] The trial court is not, however, required "to do a complete `laundry list' of the statutory factors" under section 452.375.2(1)-(8). Foeste v. Foeste, 122 S.W.3d 698, 701 (Mo.App. E.D.2003). Instead, it must only address in detail those factors that it considered particularly relevant to its custody determination. Id.; Speer v. Colon, 155 S.W.3d 60, 62 (Mo. banc 2005). The decision should also be based on the public policy stated in section 452.375.4. Dunkle v. Dunkle, 158 S.W.3d 823, 833 n. 14 (Mo.App. E.D.2005).[3] "Imperative to the best interests of the child in a joint custody arrangement are `[t]he commonality of beliefs concerning parental decisions and the ability of parents to cooperate and function as a parental unit.'" Mehra v. Mehra, 819 S.W.2d 351, 353 (Mo. banc 1991) (quoting Massman v. Massman, 749 S.W.2d 717, 720 (Mo.App. E.D. 1988)). If the parties are unable to communicate or cooperate and cannot make shared decisions concerning their children's welfare, joint legal custody is inappropriate. McCauley, 977 S.W.2d at 50.
Here, the trial court determined that placing L.J.S. in the joint legal custody of her parents was in the best interest of the child and specifically addressed that one of the most significant factors it considered was the likelihood of the custodial parent, Mother, to facilitate a meaningful relationship with the non-custodial parent. The court noted that it had concerns with both parents. The court saw "red flags" in Mother's testimony that affected its judgment, including how Mother referred to L.J.S. as "her" child and not "our" child and how Mother has said that she felt unsupervised visitation was out of the question. The court also noted its concern *926 with the possibility of parental alienation syndrome,[4] which could be caused by Mother's ill feelings toward Father. As to Father, the court noted that to be a successful parent Father would have to "step up to the plate" and prioritize his role as a father.
Although the court found fault with both parents, the resolution of conflicting evidence is left to the trial court. Miers v. Miers, 53 S.W.3d 592, 596 (Mo. App. W.D.2001). In this case, the trial judge ultimately decided that the faults of both parents would be minimized if they shared the responsibility of custody. On review of the evidence in this case, we find that this determination is based on the required statutory factors and is supported by the following substantial evidence.
Mindy Ellis, the court-appointed therapist, testified that L.J.S. wants to see Father, is not afraid of Father, and had no negative comments about her dad. Ellis also testified that any negative feelings L.J.S. had toward Father were in fact Mother's feelings that were shared with L.J.S. at some point. This transfer of feelings from Mother to daughter is what caused Ellis to be concerned with the possibility of parental alienation syndrome. Although Ellis testified that she would not diagnose L.J.S. with parental alienation syndrome at this time, if Mother's behavior was "not kept in check" that diagnosis could change. Ellis also met with Father and determined that he needed to go to parenting classes so that he could have a better understanding of how to discipline a child, and he needed to spend more time with L.J.S. so that he could build a relationship with her. Overall, Ellis found that L.J.S. would not be in any physical or emotional danger from being with Father. As to the relationship between Mother and Father, Ellis felt the relationship was not healthy, however, she recommended that the relationship could become better with individual counseling to help Mother and Father overcome their past.
Likewise, the guardian ad litem ("GAL"), appointed by the court, made a recommendation that Mother and Father should have joint legal custody. The GAL reported to the court that although Mother has some issues with Father, she believes those issues are looking back to the relationship they had in high school and it is likely that Father has changed so it will be possible for Mother and Father to participate in L.J.S.' life as a parenting unit.
There is ample evidence that Mother and Father will be able to build a better relationship. Both the GAL and Ellis testified that the strain in the Mother-Father relationship is likely based on who they were in high school. As four years have passed since they have spent any significant amount of time together, there is opportunity for change. Moreover, there is evidence from Mother and Father's testimony that in the past the two have successfully made decisions about L.J.S. and worked together to facilitate visitations. Father was able to visit L.J.S. five to eight times while he was in the military. These visits were organized, often on very short notice, by the parents without intervention from the court or other authority, indicating that both parties have in the past made an effort to cooperate. Father testified that he had no problem with Mother acting as the supervisor if the court decided to order supervised visitation. More importantly, there is no evidence on the record that indicates any of the past visits have gone badly. There is no testimony regarding fighting between the parents over the *927 phone or in front of L.J.S. when they have been together. At worst, the testimony indicates that there have been scheduling conflicts and both parties could have done more to be flexible to the other person's needs. Inflexibility alone does not make it impossible to parent as a unit.
Finally, the evidence is clear that Father has always wanted to be a part of L.J.S.' life. He was there at the birth of his daughter and saw her often until he left to join the military. Although not every attempt to visit with L.J.S. was successful, it is clear that Father attempted to see L.J.S. when he was given an opportunity for leave. Father's testimony also indicated that he would be willing to subject himself to whatever the court ordered as far as parenting classes and supervised visitation so long as it meant he would get to spend more time with L.J.S.
Based on the foregoing evidence, we find that there is substantial evidence to support that the trial court's grant of joint legal custody and determination that Mother and Father will be able to function as a parental unit in making decisions for L.J.S. is in the best interest of the child. Point one is denied.

Joint Physical Custody
"With respect to custody and visitation issues, the trial court has broad discretion, and we give even greater deference to these decisions than in other civil cases." Dunkle, 158 S.W.3d at 833. Where, as here, the parties do not agree on a custodial arrangement, section 452.375.6 requires the trial judge to make findings as to the relevant factors that made a particular arrangement in the best interest of the child. Joint physical custody is defined as "an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents." Section 452.375.1(3). Section 452.400.1 addresses original orders of visitation and gives the court broad powers to establish visitation to protect that child's best interest.
Here, the trial court found that it was in the best interest of the child to grant joint physical custody to Mother and Father. Father has physical custody of the child, including overnight visits, every Tuesday, alternate weekends, alternate holidays, and several weeks during the summer. Mother challenges the award of joint physical custody with "unsupervised visitation" because the weight of the evidence showed that a supervised, limited contact schedule was in the minor child's best interests. We disagree.
In determining the child's best interest, section 452.375.2 requires that the trial court consider all relevant factors, including the eight factors set out in the statute; however, it must only address in detail those factors that it considered particularly relevant to this custody determination. Speer, 155 S.W.3d at 62. In reviewing the evidence, this Court will not reweigh the evidence, even if the evidence could have supported another conclusion. St. Lawrence v. St. Lawrence, 109 S.W.3d 225, 226 (Mo.App. E.D.2003).
The trial court's award of joint physical custody, which by definition is custody and not visitation, properly considered the eight statutory factors. The court noted a significant factor which it used for determining custody in this case was which parent was more likely to allow the child frequent and meaningful contact with the other. The court found this factor weighed in favor not only of joint legal custody, but also in favor of joint physical custody. Further, the court had reservations with granting sole physical custody of *928 L.J.S. to either parent. Regarding Father, the court noted that no one asked that sole physical custody be granted to Father and that the relationship that existed between Father and child was less than ideal. Regarding the award of sole physical custody to Mother, the court was particularly concerned with the possibility of L.J.S. suffering from parental alienation syndrome. Ms. Ellis testified that the child could be more damaged in the long run from parental alienation than from being thrust into a situation with Father, whom she did not know very well. In light of this testimony, the court clearly determined that joint physical custody was the best way to avoid the possibility of parental alienation syndrome.
Mother argues that the court's schedule of unsupervised "visitation" is against the weight of the evidence because the evidence shows that the court-appointed therapist, the GAL, Mother, and even Father, all suggested that initial visitations with L.J.S. be supervised. To some, it may seem out of the ordinary that the trial court would go against all of these recommendations; however, it is within the discretion of the trial court to make the determinations that are in the best interest of the child. Francka v. Francka, 951 S.W.2d 685, 690-92 (Mo.App. S.D.1997). The trial court watched as each of the witnesses testified and even, in some cases, directly questioned the witnesses. Because the trial court had this authority, we defer to the trial court on issues of credibility of witnesses and the trial court is free to believe all, some, or part of any witnesses' testimony. Malawey v. Malawey, 137 S.W.3d 518, 522 (Mo.App. E.D. 2004).
Each of the witnesses agreed that Father should eventually have unsupervised visitation. Although each witness suggested some initial supervised visitation, the period of time was consistently limited and resulted in Father having a regular unsupervised visitation schedule. At trial, Ms. Ellis testified that in her sessions Mother was adamant that unsupervised visitation was out of the question. We recall, however, that the court viewed this as a "red flag." The court would have considered the suggestions of each witness in light of all of the evidence. Recalling the testimony of Ms. Ellis that L.J.S. was not afraid of Father, enjoyed her visits with him, and was not in any danger, physically or emotionally, from spending time with Father, it is clear that the trial court had substantial evidence that the periods of custody could be unsupervised.
As to the court's award of joint physical custody, the trial court is not bound by the requests of any party as to custody or visitation, even when both parties agree. See In re Marriage of Chorum, 959 S.W.2d 900, 903 (Mo.App. S.D. 1997) (where both Husband and Wife requested that sole custody of the child be awarded to Wife, but the court held those wishes were not binding on the court because the court had to consider the child's best interest by considering all relevant factors). Like the judge in Chorum, the trial court here clearly found that by considering all factors, and not just the recommendations of the relevant witnesses, the best interest of the child was served by a finding of joint physical custody with unsupervised visitation.
The following evidence also supports the finding that joint physical custody, as indicated in the court's parenting plan, is in the best interest of the child. Father has shown a desire and willingness to parent. Father requested joint physical custody in both of the parenting plans he submitted to the court. In each parenting plan, Father showed that he would be willing to go through whatever visitation requirements *929 the court found necessary so that he could be a successful parent to his child. Mother argues that Father's failure to object to supervised visitation and his testimony that he thinks supervised visitation and/or parenting classes are a good idea indicates Father's inability to function as a good parent; however, it is possible that the trial court viewed this evidence as an eagerness to improve himself and become a better parent. This is especially likely since Father indicated that the requirements did not matter to him, so long as he would get to spend more time with his daughter eventually.
Mother requested sole physical custody in her parenting plan, claiming that Father is a stranger to his daughter and supervised visitation would be best. There is no evidence, however, to support this. The court-appointed therapist found that L.J.S. was not afraid of Father and always looked forward to their visits. The only negative comments that L.J.S. made about Father seemed to come directly from Mother. In one of Father's proposed parenting plans, he suggested a progression that included short visits supervised by Mother initially, and then longer visits and eventually overnight visits supervised by his parents because he lives in their home. The record, then, indicates that the custody periods would be "supervised" to a degree by Father's parents for a period of time.
In conclusion, we will recall the evidence mentioned above in the discussion regarding joint legal custody. Father and Mother have successfully co-parented and arranged visitation on many occasions. Although not every attempted visitation worked out, the parents have shown an ability to communicate and make arrangements for visitation without orders from the court. Father has also shown a desire to help raise his daughter by providing child support. There was absolutely no testimony that any of the visitations that took place ever ended badly, therefore, it can be inferred that even though Mother and Father have issues in their relationship that could be improved upon, they have been able to put those differences aside when L.J.S. is concerned. Father has clearly shown a willingness and desire to be a successful parent and Mother failed to provide any evidence that joint physical custody or unsupervised visitation would cause L.J.S. physical or emotional harm; therefore, this evidence supports the findings of the trial court. Point two is denied.

Child Support
Mother's third point on appeal challenges the trial court's failure to award her retroactive child support. In reviewing a child support award on appeal, the trial court's judgment may be reversed only if there is an abuse of discretion. Brown v. Shannahan, 141 S.W.3d 77, 81 (Mo.App. E.D.2004). A temporary order of support was entered on May 15, 2006, and ordered Father to pay $364.00 per month. Another temporary order was issued on October 11, 2006, ordering Father to continue paying support of $364.00 per month. Although Mother requested that the child support award be retroactive to the date Father filed the original petition, the court did not grant retroactive child support in either of the temporary support awards or in the final judgment.
"Any award for periodic child support may be retroactive to the date of service of the original petition upon the obligor." Section 210.841.7. The use of "may" confers discretion on the trial court to determine the liability of the natural father. DeCapo v. DeCapo, 915 S.W.2d 343, 349 (Mo.App. W.D.1996). It was, therefore, within the trial court's discretion to enter retroactive child support, or not. *930 Runge v. Runge, 103 S.W.3d 804, 807-08 (Mo.App. E.D.2003).
Although the court did not grant the retroactive child support, there was testimony by both parties that Father and Mother made an agreement that Father would pay $3,768 in "back support." It is further agreed that Father had paid $600.00 in child support in the period of time between filing the petition and the May 15, 2006 Temporary Support Order. Father testified, however, that he did not continue to pay because he was not getting to see L.J.S as often as he would have liked and that he was told by Mother several times that it was okay for him to stop paying the child support. Mother confirmed that she told Father to stop making those payments.
At trial, the court ordered Father to pay monthly child support in the amount of $423.00. The court did not order the retroactive child support because there was testimony that Mother said Father did not have to pay it. Since Father was under no prior judgment to pay the retroactive child support, the award of retroactive child support is discretionary with the trial court. We find no abuse of discretion. Point three is denied.
The judgment of the trial court is affirmed.
BARNEY, P.J., and BURRELL, J., concur.
NOTES
[1] Although the court ordered joint physical custody and visitation, in fact, section 452.400.1(1), concerning visitation, applies only if a parent is not awarded joint custody pursuant to section 452.375.1. As such, visitation must be addressed only if the parent is a non-custodial parent. The provisions of section 452.400.1(1) state "[a] parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his or her emotional development." Supervised visitation is "visitation which takes place in the presence of a responsible adult appointed by the court for the protection of the child." Section 452.400.2(3). For ease of discussion, we shall denominate Mother's complaints regarding the periods of time in which Father has custody just as Mother, the witnesses, and the court did.
[2] All references to statutes are to RSMo 2000, unless otherwise specified.
[3] "[I]t is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child" unless the court makes specific findings that such contact is not in the child's best interest. Section 452.375.4. Also as a matter of public policy, parents are encouraged to participate in decisions affecting their children and to use alternative dispute resolution. Id.
[4] Mindy Ellis testified that parental alienation syndrome is "where one parent attempt[s] to alienate a child from the absent parent . . . emotionally."